BURKS AND MOORE V. MATHEW WATSON.

1. VENDOR'S LIEN—PRACTICE.—A remote purchaser, in possession of land against which it is sought to enforce the vendor's lien, is properly joined as defendant with the maker of the note sued on and secured by the lien. Being a party, he can defend by showing, if he can, that he is a purchaser without notice of the lien, and by urging whatever defense of law or fact the maker of the note could. He can also appeal or prosecute a writ of error, regardless of the acts of the maker of the note.

2. NOTE PAYABLE ON CONTINGENCY.—A note payable on contingency, that lands, for which it is in part payment, should be recovered by the payee of the note, becomes payable upon the surrender of the land by the adverse claimant; and it does not affect the note, either as to its validity or its securities, that it was assigned to the adverse claimant in consideration of its release.

3. GENERAL EXCEPTIONS—PLEADING.—In passing upon the sufficiency of the petition, under general exceptions, it must be held by the court that everything is alleged properly which is embraced in the allegations made, upon a reasonable construction of their import, as aided or explained by that which appears in exhibits pertinent to the issues made.

4. EXHIBITS.—The use and purpose of an exhibit is to set forth, in detail, that which is alleged in more general terms, or to embody in

the record such facts as will, in legal effect, amount to the facts as alleged in the petition, or to aid the allegations in fixing more accurately and definitely their import; but not to supply the omission or allegations necessary to present a good cause of action.

5. VENDOR'S LIEN.—That an obligation for balance of purchase-money for land, payable on condition of the establishment of title against an adverse claimant, has been assigned to such adverse claimant in satisfaction of his claim, does not affect the lien, as upon the entire interest in the land sold.

6. PRACTICE.—Where an agent conveyed land of his constituents, in a suit to enforce the vendor's lien for the purchase-money in such sale, the admission of a deed by said constituents ratifying the act of the agent, not recorded without proof of execution, while erroneous, still, being immaterial, the admission is not cause for reversal.

7. EVIDENCE OF PENDENCY OF SUIT.—Where it is in issue, whether a suit be pending for the recovery of land, to negative the existence of such suit, the record of it, with order of dismissal, is evidence, but not of any fact appearing in the record.

ERROR from Red River. Tried below before the Hon. John C. Easton.

The facts are fully stated in the opinion.

*Clark & Todd,* for plaintiffs in error.—The petition does not allege that plaintiff or said heirs were entitled to the fee or possession of the land; it does not show that they, or either of them, were in a condition to convey to Hopkins any valuable interest in this land; it does not show any facts or circumstances upon which the law raises and attaches the vendor's lien. In the case of Wynn *v.* Flannegan, 25 Tex., 782, the Supreme Court says: "A vendor's lien upon land is not established by proof that the parties agreed that one of them should have a vendor's lien upon certain land. Such a lien arises by operation of law, when certain facts exist. If the facts do not exist, the vendor's lien does not arise. Any other kind of lien upon land, such as a mortgage lien, must be evidenced by writing." We think the petition fatally defective, for the want of the allegation of such facts as would raise a vendor's lien, and that the demurrer should have been sustained.

Again, as to defendants Burks and Moore. In order that they might properly be made parties to this suit, and this property in their hands be subjected to the payment of Watson's demand, it was essential that they should have been charged with notice of the lien claimed by plaintiff. This is the gist of plaintiff's cause of action against them, and the only circumstance that could make them necessary or proper parties to the suit. Without this allegation, notifying them to meet this issue, plaintiff could introduce no proof upon it. The allegation in the petition that appears to have been intended to effect this object is: "Petitioner further shows, that Joseph H. Burks and Sam. Moore, both of whom reside in this county of Red River, are in possession of said tract of land, using and cultivating the same; but your petitioner charges that they had notice of the existence of said bill of exchange, because a lien for the payment of the same was reserved upon said tract of land in both of the said deeds of the said R. M. Hopkins." This is the only allegation in plaintiff's pleadings in reference to notice of any kind whatever; and this, it will be observed, only charges them with notice of the existence of the bill of exchange. An examination of said bill will show that it contains nothing in reference to any security for its payment, or in reference to any lien. It does not state that it was given for any consideration whatever. So far as the bill itself shows, it may have been accommodation paper. The reason given by plaintiff for thinking Burks and Moore had notice of the existence of the bill, was "because a lien was reserved for the payment of the same in both the Hopkins deeds." It is not alleged that they had any notice of the deeds, nor is it alleged that said deeds were of record.

These positions, it is submitted, are fully supported by the following authorities, to which we respectfully invite the attention of the court:

In the case of M'Clenney v. M'Clenney, 3 Tex., 197, the court say: "The execution of a lien on property in Alabama is no

notice to affect creditors or subsequent purchasers of the same property in this country; and unless actual notice to the creditor or purchaser here is averred in the petition, in a suit to enforce the lien, a demurrer to the petition will be sustained." In Gray v. Osborne, 24 Tex., 157, the court say: "The plaintiff must show a good cause of action by appropriate averments of the facts which constitute it, and not merely state the evidence by which it may be maintained, or conclusions derived from the evidence." "The court cannot, in violation of the plainest rules, come to the aid of a party, although it may be easily inferred, from the aspect of the particular case, that there will ensue a long delay in the collection of a just demand." In Whitlock v. Castro, 22 Tex., 109, opinion by Roberts, J., it is said: "In ascertaining whether or not the averment of a fact necessary to support or qualify a cause of action has been made, the court is not required to collate detached parts of the recitals in it, and construe them in a connection and for a purpose not intended by the pleader, in order to supply, by the aid of inferences, a distinct and material averment, which has been clearly omitted in its proper place." In same report, page 610, Malone v. Craig, the court say: "A petition should state the plaintiff's cause of action by distinct averments, and not leave it to the court to deduce the existence of one fact from the statement of another." In Hanks v. Enloe, 33 Tex., 627, the court say: "It was as imperative for the plaintiff to set out a good cause of action in his petition, as it was for him to prove one on the trial; and having failed in his pleadings, the court should have sustained the demurrer."

*V. W. Hale* and *D. H. Scott*, for defendant in error.

ROBERTS, CHIEF JUSTICE.—The plaintiffs in error being in possession of the land upon which a vendor's lien was sought to be enforced, in the suit of Watson, defendant in error, against Hopkins and Hopkins, on a draft given by them in the purchase of the land from Taylor, the assignor of Watson,

and being on that account properly joined as defendants in the suit with Hopkins and Hopkins, through whom they derived title to the land by purchase, had a right in said suit to show that the land in their possession was not liable to the lien sought to be enforced against it.

This they might do in two ways: First, by showing that they had bought and paid for the land without any notice, actual or constructive, of the lien upon the land at the time of their purchase from and payment to Hopkins, from whom they bought.

It is hardly necessary to consider any part of the matters relating to this defense, because the recorded deeds from ·Taylor and Watson to Hopkins, under which they claim, gave notice of this lien, by express reservation of it; which deeds were made a part of the petition, as exhibits to it. And if they had such notice, there could be no question of valuable improvements made by them in the case, under any answer that was filed by them. Secondly, by making any defense to the action that would prevent entirely or reduce the amount of the recovery upon the draft, or prevent the amount recovered from being shown to be a charge on the land as a vendor's lien; for if it could be made to appear in this suit that the plaintiff had not alleged, or had not proved, a good cause of action against Hopkins and Hopkins on the draft, or that the draft never constituted a lien on the land, or that the lien had been lost, they would thereby relieve the land from the charge sought to be imposed upon it in their hands in this suit. Hence, it was proper for them to file exceptions, as they did, to the sufficiency of the cause of action, as stated in the petition of Watson, and to except to the evidence offered to sustain it, and to sue out a writ of error for the revision of the judgment against Hopkins and Hopkins, as well as against themselves, whether their co-defendants joined in the writ of error or not.

The exceptions to the petition were general, and not special.

This suit was brought in 1869, upon a draft for $6,393.75, dated December 20, 1859, payable on the first day of January, 1862, to I. T. Taylor, and drawn by R. M. and J. E. Hopkins, and assigned to M. Watson (assignment not dated) on the 26th of March, 1867, as alleged in the petition.

The payment of the whole amount of this draft was to be on a condition expressed in an agreement, embraced in a quit-claim deed executed to R. M. Hopkins by I. T. Taylor, acting for the heirs of William F. Hamilton, who are recited therein to be the heirs at law of William F. Hamilton and Robert Hamilton, purporting to convey the interest, title, and right of the said heirs to the McKenzie survey of 1,438 acres of land, for the purchase of which this draft, with two others, was therein said to have been given, and which conveyance and agreement was executed by Taylor and R. M. Hopkins, at the date of the draft,—though, by mistake, it appears in the record to be dated on the 20th of December, 1860. Said conveyance and agreement and draft are made a part of the petition, as exhibits to it. Said agreement recites that two other drafts were given for said land, amounting to the same sum of $6,393.75, payable before 1862, without any condition annexed; so that half of the consideration given for the land was payable absolutely, and the whole of the other half, embraced in the draft now sued on, was payable only on a condition. The whole amount of the draft was claimed in this suit, not by alleging that said condition had been literally complied with, but by pleading and proving such other facts as, it is contended, (on the part of the plaintiff below, and excepted to by the defendants below,) were sufficient to supersede the necessity of a literal compliance with the said condition.

That it was competent for the plaintiff to have done this, cannot be questioned.

In determining whether or not this has been done, it is proper to consider the facts that appear in the exhibits to the petition, (that is, in the draft and its assignment, in the con-

veyance, embracing the agreement executed by Taylor and R. M. Hopkins, and in the deed executed by Watson,) in connection with the allegations in the petition.

In passing upon the sufficiency of the petition, under general exceptions, it must be held by the court that everything is alleged properly which is embraced in the allegations made, upon a reasonable construction of their import, as aided or explained by that which appears in the exhibits pertinent to the issues made in the case.

This petition, in its construction, undertakes to set out the real facts of the transaction, in their legal effect, as understood and designed by the parties in what is expressed in the instruments made a part of the petition upon which the suit is founded; and to state additional facts, part of or connected with the transaction, which have been omitted by the parties in the execution of said instruments.

In the agreement contained in the conveyance of I. T. Taylor, signed also by R. M. Hopkins, it is stated, that the draft "is to be left in the hands of Epperson & Sims, attorneys-at-law, to abide the decision of the claim of the heirs aforesaid to the whole estate of Robert Hamilton," and "if said heirs of William F. and Robert Hamilton gain the entire estate of said Robert Hamilton, then the whole of said draft is to be paid"; and "if said claim is adjudged to be one-sixth more than one-half of said estate of Robert Hamilton, then one-sixth of said draft is to be paid to said Taylor." (This last condition need not be further referred to, as the suit is brought for the whole amount of the draft.) It is to be implied, from this language, that there was a suit, or suits, pending, in which there was an effort, by the heirs of William F. Hamilton, to have adjudged to the said heirs, as against some person or persons not named, the whole of Robert Hamilton's estate; and that upon said claim being gained, as against such person or persons in said suit, the said Hopkins would have a full consideration for the whole of said draft,

8

by virtue of the conveyance made to him by Taylor, when and for which said draft was executed.

One-half of the amount of the three drafts given for the land was payable without any express condition in the agreement; and the only guaranty for their title to the interest in the land represented by the two unconditional drafts, was a special warranty in the deed executed to him by Taylor, in which it is stipulated, that "the heirs of William F. Hamilton [for whom he was acting] do not warrant the title to said land, except against parties claiming under or through them, the said heirs of William F. Hamilton and of Robert Hamilton." But as to the interest in the land represented by this draft, being the other half of the purchase-money, there was not only this special warranty given to secure Hopkins, but also the condition in the agreement. It is deducible from this, that there was a half interest in the land claimed by some one in the pending suit, the whole of which might not be gained by the heirs.

The number or title of the suit is not stated in the agreement. In the description of the land, it is said to be "in the possession of R. M. Hopkins, and being in part now in litigation, in the suit of Hopkins *v.* Watson, No. —— on the docket of the District Court of Red River county"; but it is not stated that this is or is not the suit involving the claim of the heirs of William F. Hamilton to the estate of Robert Hamilton.

The petition does not undertake to set out the terms of this agreement, but to state the real facts relating to the sale of the land, and makes an exhibit of the agreement and conveyance, as consistent with and in explanation of them.

In this mode of pleading, the exhibits may perform a very important office; for the use and purpose of an exhibit is to set forth in detail that which is alleged in more general terms, or to embody in the record such facts as will, in legal effect, amount to the facts as alleged in the petition, or to aid the allegations of a petition in fixing more accurately and

more definitely their import, but not to supply entirely the omission of allegations necessary to present a good cause of action.

An exhibit to the petition, therefore, may be said to be made in aid of or in elucidation of allegations; but it does not, by itself, constitute allegations upon which issues may be formed irrespective of the allegations made in relation to it.

If the exhibit is contradictory of, or not correspondent in legal effect to, the allegations concerning it, then the allegations stand unsupported and unaided by it, and the issues must be formed and tried on the allegations as made in the petition.

The predicate laid in this case, for stating other facts as a substitute for the allegation of a compliance with the condition specified in the agreement, that the heirs should obtain a recovery of their claim to the whole estate of Robert Hamilton, was as follows, to wit: That Taylor, acting for certain persons named, being heirs of William F. Hamilton and Robert Hamilton, sold all their right, title, and interest in 1,438 acres of land [describing it] to R. M. Hopkins, and thereupon executed to him a deed therefor, and R. M. Hopkins on the same day conveyed one-half interest in the same to James E. Hopkins; that for a part of the purchase-money to be paid for said land, R. M. and J. E. Hopkins executed their draft, setting out its terms, payable to Taylor or order on the 1st of January, 1862, for $6,393.75; "that said bill, [draft,] by the terms of said sale, was delivered to Epperson & Sims, a firm of practicing attorneys, composed of B. F. Epperson and M. L. Sims, to remain in their hands to abide the determination of certain suits then pending in the District Court of said county, [Red River county, before referred to,] in which the title of one-half of said tract of land was involved between the said heirs of said Robert Hamilton, deceased, and petitioner, M. Watson; and if said litigation should be decided in favor of said heirs, adjudging to them the whole of said land, then the said bill was to be fully paid

to their agent, the said Taylor." The other condition need not be repeated.

If these were the real facts relating to the trade for the land, they negative the conclusion, *prima facie* at least, that Hopkins had any other interest in the recovery of the said heirs' claim to the whole of Robert Hamilton's estate, than that thereby the claim of Watson, their opponent in the suit, would be removed. That would be a reasonable intendment from the facts stated, which would be made in favor of the petition, considered under a general exception. In connection with these facts, it was sufficient to allege that Watson had compromised the suit with the heirs, and released his interest in the land to Hopkins by his deed, equally as to have alleged that the heirs had gained their claim to the whole estate of Robert Hamilton. The allegation that the deed of Watson was delivered to Hopkins, embraces the intendment therefrom, that Hopkins received the deed from Watson, that is alleged to have been delivered. The terms of the agreement embraced in the conveyance of Taylor made an exhibit to the petition, though not literally in accordance with the facts thus alleged, are, in legal effect, when fully considered in reference to the subject-matter and parties, consistent with and pertinent to them.

The facts might, it is true, have been set out with allegations, both affirmative and negative, that would have presented a cause of action so plainly as to have prevented controversy on the question of its sufficiency. We have to determine it as presented, with every reasonable intendment arising upon what is alleged in favor of the petition.

We conclude, then, that the settlement of the suit, involving the claim provided against by the conditions in the agreement, the assignment of the draft under the agreement made in 1867, and the acceptance by Hopkins of a quit-claim deed from Watson, reciting the said transfer to have been made in consideration of said deed from Watson to Hopkins, were facts sufficiently alleged, as matter of pleading, under a gen-

eral exception; and, in reference to the facts alleged, were, in legal effect, tantamount to an allegation of a substantial compliance with the condition upon which the liability to pay the whole amount of the draft sued on depended.

This is evidently the important question in this case as it is presented in the record, and the one upon which the plaintiff in error must have mainly relied in bringing the case to this court for revision. After a careful examination, we are satisfied that there was no error in overruling the general exception to the petition. Its examination has led to a reflection, in regard to the manner in which our judicial proceedings are conducted very often, which may be here expressed without intending any criticism on this case in particular.

Brevity of allegation in pleading is commendable, when it certainly and perspicuously embraces all that is necessary to be expressed; but when it falls short of that, as illustrated by this and numerous other cases, it is expensive, and leads to procrastination in litigation,—all of which might be, and for the credit of the legal profession, as well as for the common good, should be, avoided, by a little time spent in a careful analysis of the subject, with its result developed in the recognized forms of expression in judicial proceedings.

It is contended, by plaintiffs in error, that the petition shows an effort to fix a lien on the whole of the land by contract, in and through the arrangements made, in 1867, between Taylor, Watson, and Hopkins, by which the draft was transferred to Watson, who, in consideration of the draft, released his interest in the land to Hopkins. This position assumes that the petition places Watson in the attitude of a vendor of part of the land, and that as he, Watson, did not get the draft from Hopkins, as a consideration for the part interest in the land which he, Watson, conveyed to him, as to that part the draft did not have originally, and did not carry with it by the assignment, a vendor's lien upon that part of the interest in the land so conveyed by Watson. In support of this, we are referred to the case of Wynn *v.* Flannegan, 25

Tex., 782, which holds, that a vendor's lien cannot be created by contract in favor of a person who did not occupy the position of a vendor in the sale and transfer of the land.

That authority is not applicable to the facts alleged in the petition, as they are intended to be, and may properly be, understood.

Watson derives his lien by the assignment of the draft from Taylor, and not by his deed of release to Hopkins.

Taylor, acting for the heirs of Hamilton, by his conveyance assumed to convey their interest, not to the half or any fractional part of the tract of land, as if some other person was recognized as joint owners with them, but their interest in the whole tract, claiming their interest to embrace the right to the whole tract, and by the condition in the agreement, embraced in the deed, in effect, guaranteed against any interest claimed by Watson in the suit pending between them, and which might, if they were mistaken in their claim of the whole of the interest in the tract, be gained from them by Watson in that suit. When that suit was settled and dismissed, and Watson executed a deed of release and quitclaim to Hopkins, the deed of Taylor, for their interest in the whole of the land, stood in full force and effect, as a conveyance to him of the whole of their interest in the whole of the land, unaffected by and relieved from any claim of Watson involved in the suit, which is what Hopkins contracted for in the purchase of the land from Taylor, and which was the consideration for the full amount of the draft. This is the reasonable construction of the facts alleged and exhibited in the petition; and if not the true facts of the case, the defendants below should have stated such facts as would have raised a different issue on that subject.

There was an exception to the admission in evidence of the deed of ratification executed by the heirs of William F. Hamilton, because it was not recorded, and notice given of its filing amongst the papers of the case, although it had been authenticated for record. This objection might have been

sufficient· to exclude the deed, if it had been a necessary muniment of title, and had been offered in evidence as an instrument necessary to complete the responsibility of Hopkins to pay the full amount of the draft. By the amended petition, we learn that it was not a deed delivered, but only tendered, as a security against any danger of the want of authority of I. T. Taylor to contract for all of the heirs of William F. Hamilton, when he made the trade with Hopkins about the land, in 1859. Hopkins did not require any such security when the transaction was closed up with him, in 1867, when he received the deed of release from Watson, alleged to have been then delivered to him, showing upon its face that the draft given by him, as the last payment on the land, was transferred to Watson, under circumstances indicating that he would be required to pay the whole amount of said draft, as the balance of the consideration for the land purchased from Taylor, acting for the heirs of William F. Hamilton. The tender of said deed was, therefore, an immaterial matter, and could not affect the true issue before the jury, whether they regarded it or not; and its admission or exclusion would equally have been no material error in the case. The admission of the deed in evidence, and the charge of the court upon it, may be properly regarded as rulings upon an abstraction not pertinent to the real issue in the case under the pleadings. If there had been a plea of failure of consideration, by reason of Hopkins not having received a full title, as guaranteed by Taylor, then this might have been a material matter in issue in the case.

The plaintiffs in error excepted to the admission in evidence of the petition and its exhibits, and the answer in the suit of M. Watson against the heirs of William F. Hamilton, with its dismission in the District Court of Red River county.

This record was admissible, in response to the allegations in the petition, made to show that a suit was pending, in which the claim of the heirs of William F. Hamilton to the estate of Robert Hamilton was involved, and the nature of

the claim, and that it was opposed by Watson, and by him only, and as tending to show that the suit, as to Watson, was at an end.  It could not have been offered to prove the truth of anything contained in petition, its exhibits, or the answer in the record of said suit; nor can we presume that it was, or that it was so regarded on the trial of this case.  There is nothing in the charge of the court calculated to mislead the jury upon the real issues in the case; and it is not deemed necessary to refer to the commercial and other questions that were raised by the exceptions, and by the assignment of errors, further than to say, that the evidence was reasonably sufficient to sustain the verdict and judgment rendered in this case.

AFFIRMED.