## BROOKS et al. v. AMERICAN NAT. BANK OF BEAUMONT.

### No. 3053.

Court of Civil Appeals of Texas. Beaumont.

March 18, 1937.

Rehearing Denied March 24, 1937.

W. D. Gordon, of Beaumont, for appellants.

R. E. Masterson, Dan Masterson, W. H. Davidson, and Bowers & Ross, all of Beaumont, for appellee.

WALKER, Chief Justice.

On February 8, 1927, Brooks Supply Company, a corporation, by T. D. Brooks, president, executed and delivered to the American National Bank of Beaumont the following note, indorsed on the back by T. D. Brooks and W. D. Gordon:

"$1,325.00

"Beaumont, Texas, February 8, 1927.

"Ninety Days after date, I, we, or either of us promise to pay to the order of The

American National Bank of Beaumont the sum of $1,325 and 00 Cts Dollars for value received, with interest at the rate of 6 per cent per annum after maturity until paid. And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or if collected by suit or through the Probate Court, an additional amount of ten per cent shall be added to the same as attorney's fees.

"The drawers and Endorsers severally waive presentment for payment, protest and notice of protest for non-payment of this note.

"Payable at The American National Bank of Beaumont, Texas."

This note was not paid when due, nor protested nor presented to the indorsers for payment, nor were the indorsers "given notice of dishonor." On the 1st day of March, 1927, Brooks Supply Company filed its petition in bankruptcy, and on that day was adjudged a bankrupt; J. Zorn, Jr., was subsequently appointed trustee. T. D. Brooks died on the 10th day of March, 1929, leaving a will whereby he devised all his property, except $1,000, to his wife, Mrs. Pearl Brooks, and named her "independent executrix"; this will was admitted to probate on the 23d day of April, 1930.

On the 15th day of August, 1929, the American National Bank instituted this suit against Mrs. Pearl Brooks, executrix of the estate of T. D. Brooks, deceased, Pearl Brooks, individually, and W. D. Gordon; and for cause of action alleged the execution and delivery of the note copied above, copying the note in the face of the petition; the bankruptcy of Brooks Supply Company, and the payment on the 28th day of July, 1927, of $265 by J. Zorn, Jr., trustee; the maturity of the note; the failure of the defendants to pay it "though often requested"; a count on attorney's fees; the prayer was for the amount due on the note, principal, interest, and attorney's fees, and for general and special relief, both in law and equity. Mr. Gordon answered by general demurrer, general denial, and by plea of cross-action against his codefendant to the effect that he and T. D. Brooks, by their mutual contract, were liable as indorsers in proportion to their stock holdings in Brooks Supply Company, and in the event the plaintiff recovered against him, that he had judgment under that contract over against his codefendant for any sum he might be forced to pay in excess of his liability under his contract with T. D. Brooks. Mrs. Brooks answered by general denial and by cross-action against Mr. Gordon. On the 15th day of October, 1935, the American National Bank filed its first amended original petition, pleading and praying as in the original petition with these additions: (a) The Brooks Supply Company "was actually and notoriously insolvent, it having theretofore to-wit filed a petition of bankruptcy in the United States District Court," etc; (b) after describing the note, it was further alleged:

" * * * Whereby defendants, each and all, became liable and bound to plaintiff, and promised plaintiff to pay it the sum of money in said note specified, together with all interest and attorney's fees due thereon, according to the face and tenor, effect and reading; said note being in words and figures substantially as follows, to-wit."

Defendant, Mrs. Brooks, having married Thomas Minyard since the institution of this suit, he was made a party defendant on the suggestion of Mr. Gordon; he answered by general demurrer and general denial.

The case was tried to the court without a jury on the 28th day of October, 1935, all parties appearing except Mr. Gordon, and judgment was entered in favor of the American National Bank against Mr. Gordon and Mrs. Brooks, independent executrix, for the sum of $1,499.56, being the amount of the note, principal, interest, and attorney's fees, less two credits of $265 each paid by J. Zorn, Jr., trustee, one on July 28, 1927, and the other on the 6th day of June, 1933. The plaintiff was denied recovery against Mrs. Brooks, individually, and also against her husband, Thomas Minyard, and Mr. Gordon's cross-action against Mrs. Brooks was dismissed without prejudice.

On the 21st day of December, 1935, Mr. Gordon filed his motion to vacate the judgment rendered against him on October 28, 1935, construed by him and the court as a bill of review and by the American National Bank as a motion for new trial, which was in all things granted on the 28th day of December, 1935, after overruling the motion of the American National Bank to strike. The case was set for trial on its merits on Monday, the 30th of December, 1935; it was not tried on that date, but went over to the next term of court. On the 27th day

of January, 1936, the American National Bank filed its plea to the jurisdiction of the court to try the case a second time; on that day the case came on for trial on its merits to the court without a jury. The plea to the jurisdiction and the demurrers of the defendants were overruled. On the 31st day of January, 1936, judgment was rendered in favor of the American National Bank against Mr. Gordon and Mrs. Brooks, independent executrix, jointly and severally, for the sum of $1,397.88, the amount due on the note, principal, interest, and attorney's fees, less the two payments set out above and a third payment of $104.27 by J. Zorn, Jr., trustee; Mr. Gordon was given judgment on his cross-action against Mrs. Brooks, independent executrix, for $1,232.46; he and the bank were denied recovery against Mrs. Brooks, individually; Mrs. Brooks' cross-action against Mr. Gordon was denied; no recovery was allowed against Mr. Minyard.

The case is before us on appeal by writ of error, prosecuted by Mr. Gordon and Mrs. Brooks, independent executrix, against both the judgments described above; the parties will be referred to as appellants and appellee.

### Opinion.

Since appellee, the American National Bank, stated in open court on oral argument that it was satisfied with the relief granted it in the second judgment dated January 31, 1936, we pretermit a discussion of its cross-assignments that the court erred in setting aside the judgment entered in its favor on the 28th day of October, 1935.

Appellants present the following assignments of error against the judgment of date January 31, 1936; (1) The court erred in overruling the general demurrers to appellee's petition; (2) appellants were relieved of their liability as indorsers on the note because there was no pleading or proof that they were given "notice of dishonor" of the note, and because no waiver of "notice of dishonor" was pleaded or proved; (3) "there being neither pleadings nor proof adduced to establish that the assets of the principal of the obligation sued on were not adequate and sufficient, and available, to pay the primary obligation of the Brooks Supply Company, and that corporation being primarily liable to the bank on its note, and not made a party to this suit, it was manifest error to render a judgment against its endorsers, as was done in this case"; (4) "the plaintiff in the case having elected

to file its claim in the bankrupt court, and to pursue its remedy in that tribunal, without notice, as required by law, to the endorsers of the Brooks Supply Company, and having participated in the assets of that corporation, administered and dispensed to the creditors by that tribunal, is barred from recovery in an independent suit in this proceeding against the endorsers, as a matter of law."

Appellee's petition was not subject to the general demurrers. It is conceded by all parties that W. D. Gordon and T. D. Brooks were indorsers on the note sued upon within the meaning of article 5936, § 64, R.C.S.1925, of our Negotiable Instruments Act: "Sec. 64. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery he is liable as indorser, in accordance with the following rules."

Section 89 of that act, article 5938, reads as follows: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

"Notice of dishonor" to the indorsers, as provided in section 89, was not pleaded by appellee, nor was such notice shown by the evidence.

Unless waived, "notice of dishonor" was essential to fix the liability of the indorsers. Unless there is a pleading of waiver of such notice, the petition should disclose on its face the fact that such notice was given to the indorsers, "else they are discharged, and a general demurrer to a petition which does not so plead is properly sustained." First National Bank of Giddings v. Lee County Cotton Oil Co. (Tex. Com.App.) 274 S.W. 127; First State Bank of Ovalo v. Ovalo Warehouse Ass'n (Tex. Civ.App.) 276 S.W. 773; Waters v. Atlanta National Bank (Tex.Civ.App.) 261 S.W. 153.

It is the contention of appellee that the language of the note, "The Drawers and Endorsers severally waive presentment for payment, protest and notice of protest for non-payment of this note," constituted a waiver; that contention is denied by appellants because there is no language in the note waiving specifically "notice of dishonor." Since the Negotiable Instruments Act does not require "presentment for pay-

ment," "protest," and "notice of protest for non-payment" to be given the indorsers, appellants assert further that the waiver by them of the doing of these things was utterly immaterial in fixing their liability. Section 111 of our Negotiable Instruments Act, art. 5938, constitutes an answer to appellants' contentions on this point; this section reads as follows: "A waiver of protest, whether in the case of a foreign bill of exchange or other negotiable instrument is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor"; this section expressly provides that "waiver of protest" is deemed a waiver of "notice of dishonor." It is the law—section 109 of article 5938, "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied," and section 110, "Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only"—that "notice of dishonor" may be waived by language to that effect written into the face of the note at the time of its execution, indorsement, and delivery. It follows that the petition was not subject to the general demurrer for the failure to allege "notice of dishonor" after Brooks Supply Company defaulted in payment of the note.

The failure to plead specially waiver of "notice of dishonor" based upon the language of the note presents a question of pleading of some difficulty; there was no special plea of waiver, nor of the effect of the language of the note relied upon by appellee, to constitute waiver. It is the general rule of pleading that an exhibit, whether attached to the petition, or copied in haec verba in the body of the petition, as was the note sued upon in this case, cannot be used for the purpose of setting out a cause of action. We quote as follows from the opinion of our Supreme Court in Port Huron Engine & Thrasher Co. v. McGregor, 103 Tex. 529, 131 S.W. 398, 399:

"The Court of Civil Appeals held that the plaintiff's petition was not sufficient to authorize a judgment foreclosing the lien upon the articles enumerated in the mortgage and attached to the petition as Exhibit A, which were omitted from the petition. In this we think the honorable Court of Civil Appeals committed error. It is true that an exhibit cannot be used

for the purpose of setting out the cause of action upon which the plaintiff seeks to recover, but it is not correct to say that it cannot aid the allegations of the petition so as to make certain that which otherwise would be indefinite in the petition. Burks v. Watson, 48 Tex. 107; Texas & St. L. Railway Co. v. Ross, 62 Tex. 447; Milliken v. Callahan Co., 69 Tex. 205, 6 S.W. 681. In the first case cited above the court said: 'The petition does not undertake to set out the terms of this agreement, but to state the real facts relating to the sale of the land, and makes an exhibit of the agreement and conveyance, as consistent with and in explanation of them. In this mode of pleading, the exhibits may perform a very important office; for the use and purpose of an exhibit is to set forth in detail that which is alleged in more general terms, or to embody in the record such facts as will, in legal effect, amount to the facts as alleged in the petition, or to aid the allegations of a petition in fixing more accurately and more definitely their import, but not to supply entirely the omission of allegations necessary to present a good cause of action. An exhibit to the petition, therefore, may be said to be made in aid of or in elucidation of allegations; but it does not, by itself, constitute allegations upon which issues may be formed irrespective of the allegations made in relation to it.' The first case is approved in the others, and neither has been overruled."

But an exhibit, under the authorities cited, can aid the allegations of the petition so as to make certain that which otherwise would be indefinite in the petition. It was alleged in the amended original petition that the indorsers became liable and bound to pay appellee and promised to pay it the sum of money in the note specified, "according to the face and tenor, effect and reading" of the note; it was also alleged that the indorsers were liable upon the note. The general intendments of these allegations are made certain by the waiver provision of the note which was copied into the face of the petition. It is our conclusion that the petition was not subject to general demurrer for failure to allege specifically waiver of "notice of dishonor." We are supported in this conclusion by the opinion of the Commission of Appeals in Fuqua v. Mapes, 57 S.W.(2d) 97; see note on this opinion, 12 Tex.L.Rev. 99. That was a suit in county court on debt for an amount within the jurisdiction of the coun-

250

ty court, and to foreclose a chattel mortgage lien on certain live stock, the value of which was not alleged directly in the petition; however, the mortgage, set out in haec verba in the petition, warranted the value of the live stock to be $1,000. The Commission of Appeals held that, by applying the reasonable intendment doctrine, the allegation of jurisdiction was sufficient on general demurrer.

■ It is also our conclusion that the petition was not subject to general demurrer for failure to make Brooks Supply Company a party defendant, nor for failure to allege that the assets of the Brooks Supply Company "were not adequate and sufficient and available" to pay the note. Article 1987, R.C.S.1925, reads as follows: "The assignor, indorser, guarantor and surety upon a contract, and the drawer of a bill which has been accepted, may be sued without suing the maker, acceptor or other principal obligor, when the principal obligor resides beyond the limits of the State, or where he cannot be reached by the ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent."

It was held in Boggs v. Farmers' Fund of Texas (Tex.Civ.App.) 37 S.W.(2d) 205, that when the principal obligor has been adjudged a bankrupt, the presumption will be indulged that he was in a state of actual insolvency and it is not necessary to make him a party to the suit. See, also, Spurgin v. Denton County Nat. Bank (Tex.Civ. App.) 235 S.W. 970.

■ Under the third assignment, appellants further insist that the evidence was not sufficient to sustain a finding that Brooks Supply Company was "notoriously insolvent." Defining the term "notoriously insolvent," the Commission of Appeals in First Nat. Bank of Giddings v. Lee County Cotton Oil Co., supra, quoted as follows from Smith v. Ojerholm, 93 Tex. 35, 53 S. W. 341: "The term 'insolvency' has widely different meanings. When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note, although he might have ample property to satisfy an execution against him. It is in a case where the prin-

cipal has property, but is not in a condition to meet his debts as they fall due, that the necessity is the more urgent to bring suit for the protection of the indorser. It cannot be said that a debtor is insolvent, within the meaning of our law, as to his creditor, when he holds property against which the creditor may enforce a lien for the payment of the debt"; and then continued: "So, under the allegations of the petition, the Lee County Cotton Oil Company was not insolvent within the meaning of the law. In other words, it was not notoriously insolvent. It was not entirely without means for the satisfaction of the claims of creditors; it did have some property subject to the demand of its creditors."

The proof was that J. Zorn, Jr., trustee, paid to appellee the payments set out above, and that these payments exhausted the assets of Brooks Supply Company. The third assignment, both on the issue of pleading and on the issue of proof, is overruled.

■ The fourth assignment is also overruled. In filing its claim in bankruptcy against the estate of Brooks Supply Company, appellee made the following statement: "That Brooks Supply Company, the corporation against whom petition of adjudication of bankruptcy has been filed, was at and before the filing of said petition, and still is justly and truly indebted to the American National Bank of Beaumont in the sum of Thirteen Hundred Twenty-five ($1,325.00) Dollars, with interest from maturity at Six (6%) Per Cent per annum"; the note sued upon in this case was identified as the claim being presented by appellee, but nothing was said in the claim about the liability of appellants as indorsers; the claim then proceeded: "That no part of debt has been paid. That there is no offset or counterclaim to the same. That said bank has not received any manner of security for said debt whatever."

Section 16 of the United States Bankruptcy Act (11 U.S.C.A. § 34) provides: "The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt"; this section applies to all parties secondarily liable when the principal maker becomes a bankrupt, and hence has direct application to the liability of appellants as indorsers. In re Marshall Paper Co. (C.C.A.) 102 F. 872. It was held in Huggins v. Johnston, 120 Tex. 21, 35 S.W.(2d) 688, that, upon the bankruptcy of the principal maker, the

guarantors and all persons secondarily liable become liable as principals.

It follows that appellants were not released on their obligation as sureties by the election of appellee to file the note in controversy in the bankruptcy proceedings of Brooks Supply Company, and to receive and appropriate the dividends paid it by J. Zorn, Jr., trustee.

The judgment of the lower court is in all things affirmed.

Affirmed.