## FRANCIS SMITH & COMPANY v. J. M. OJERHOLM ET AL.

### Application No. 2349. Decided October 19, 1899.

**1. Indorser—Suit at First Term—Insolvency of Principal.**

Without approving the ruling of the Court of Civil Appeals herein that suit on all of three notes, secured by vendor's lien and falling due at different dates, must have been brought on maturity of the first, in order to hold liable, without protest, an indorser upon one of the notes maturing at a later date, it is held that their conclusion that the indorser was released was correct,—suit having been brought on neither note at the first term after maturity and the insolvency of the principal, as an excuse for a failure to do so, not being established. (Pp. 36, 37.)

**2. Same—Insolvency Defined.**

Insolvency of the principal is made to excuse suit against him at the first term on the ground that such suit would result in no good (Revised Statutes, article 1204), and such insolvency is not established when any part of the debt can be made by execution against him,—the term as used in the statute not bearing the technical sense of inability to meet his obligations in the regular course of business. (Pp. 36, 37.)

**3. Same—Vendor's Lien.**

A principal debtor holding property against which a lien may be enforced to secure the note sued on, is not insolvent, within the meaning of the statute, so as to excuse suit at the first term in order to hold his indorser. (P. 37.)

APPLICATION for writ of error to the Court of Civil Appeals for the Third District, in an appeal from Coleman County.

Smith & Co. sued Ojerholm as maker and Coleman as indorser of three notes secured by vendor's lien. Recovery against the indorser was denied and plaintiffs appealed and on affirmance obtained a writ of error.

The last note fell due December 31, 1895, and the next succeeding term of the District Court of Coleman County began on the first Monday in February, 1896. Suit was brought on April 8, 1896, and the delay sought to be excused because Ojerholm was insolvent and his residence unknown.

The opinion of the Court of Civil Appeals, by FISHER, Chief Justice, was in part as follows:

"The only question that arises in the case is whether the judgment is correct in releasing Coleman from liability. This suit was filed on the 8th day of April, 1896, upon three notes, described in the plaintiffs' petition, due, respectively, December 31, 1893, 1894, and 1895, each being for the sum of $60.95. These notes were executed by Ojerholm to Coleman and Davidson as part payment for 320 acres of land, which was conveyed by them to Ojerholm by deed dated December 31, 1888. Afterwards another deed was executed by appellees Coleman and David-

son to Ojerholm, correcting the field notes in the first deed, and in that deed it is stipulated that 'it is agreed and understood that this deed does not affect or in anywise release the vendor's lien in the above mentioned deed.' There is evidence in the record which shows that the land in question in 1894, and during that year, was worth two dollars an acre,—much more than the amount of the note sued upon by the appellants. Therefore we find, as a fact, that Ojerholm, as to the debt of the plaintiffs in question, was not, during the year 1894, insolvent. There is also evidence in the record which authorizes a finding to the effect that the whereabouts of Ojerholm could have been discovered and ascertained during that year, and before the suit was instituted. We held in the first appeal of this case that the maturity of the note due in 1893 would authorize the institution of suit on all three of the notes, and judgment could be rendered thereon, with an abatement of interest that might accrue on the notes not due. Under this ruling, the appellants could have instituted their suit on all of the notes during the year 1894, at which time the defendant Ojerholm was solvent as to the debt in question. Therefore this ruling, together with the fact that his whereabouts could have been ascertained during that year, leads to the conclusion that the plaintiffs were not excused from instituting suit against him, in order to fix the liability of the indorser, Coleman. Consequently there was no error in the judgment of the court in releasing him from liability."

*West & Cochran*, for application.

GAINES, Chief Justice.—We think the Court of Civil Appeals reached the correct result in this case, but we are not prepared to concur in the proposition announced in the opinion, that in order to hold the indorser liable upon the last two notes, suit must have been brought to foreclose the lien as to all the notes to the first term of court after the first fell due. But our statute provides: "The assignor, indorser, guarantor, and surety upon any contract, and the drawer of any bill which has been accepted, may be sued without the necessity of previously or at the same time suing the maker, acceptor, or other principal obligor, when he resides beyond the limits of the State, or in such part of the same that he can not be reached by the ordinary process of law, or when his residence is unknown and can not be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent." * * * Rev. Stats., art. 1204. The reason for relieving the indorsee from the necessity of suing the principal debtor, in the excepted cases, was either that a suit against him was not practicable or that it would result in no good. Hence we think that it can not be said that a principal is insolvent within the meaning of that statute when any part of the debt can be made by execution against him. Such is the construction given to similar statutes by other courts. Violett v. Patton, 5 Cranch, 142; Herald v. Scott, 2 Ind., 55. The term insolvency

has widely different meanings. When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note although he might have ample property to satisfy an execution against him. It is in a case where the principal has property, but is not in a condition to meet his debts as they fall due, that the necessity is the more urgent to bring suit for the protection of the indorser. It can not be said that a debtor is insolvent within the meaning of our law as to his creditor when he holds property against which the creditor may enforce a lien for the payment of the debt.

The application for the writ of error is refused.

*Writ of error refused.*