FIRST NAT. BANK OF GIDDINGS v. LEE COUNTY COTTON OIL CO. et al. (No. 484–3966.)

(Commission of Appeals of Texas, Section B. June 27, 1925.)

1. Statutes ⬅184—Intention of lawmaking power governs in construing act, as discovered by wording together with purpose.

In construing an act of Legislature, intention of lawmaking power must govern, as discovered by wording of act itself, together with purpose sought to be attained by enactment of law.

2. Statutes ⬅152—Express declaration that particular statute repealed not given effect, where apparent that Legislature did not so intend.

Since question of repeal is one of relative intent, an express declaration that a particular statute is repealed will not be given effect, where it is apparent that Legislature did not so intend.

3. Statutes ⬅157—General clause repealing inconsistent statutes effective only to extent of inconsistency.

A general clause repealing "all acts or parts of acts inconsistent herewith" is effective in repealing inconsistent enactments, in the absence of constitutional prohibition against such method of repeal; but the repeal extends only to statutes on the same subject clearly inconsistent and irreconcilable with the repealing act, and only to the extent of the conflicting provision.

4. Bills and notes ⬅225—Act providing means of fixing secondary liability other than by protest and notice held repealed by Uniform Negotiable Instruments Act.

Rev. St. 1911, art. 579, providing means of fixing liability of drawers and indorsers of bills of exchange, other than by protest and notice, as required by custom of law merchant, *held*

repealed by Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197), providing different and specific method whereby indorser of negotiable instrument might be notified of dishonor thereof, and expressly repealing all acts or parts of acts inconsistent therewith.

5. Bills and notes ⬅469—Presentment, demand, nonpayment, and notice thereof conditions precedent to liability of drawer or indorser, and must be alleged.

Under Negotiable Instruments Act, §§ 70–114 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—70 to 6001—114), where it is sought to charge drawer or indorser, presentment, demand, nonpayment, and notice thereof are conditions precedent to his liability, and must be alleged, or sufficient excuse for omission stated, except where suit is on promissory note, or where drawer and drawee are same persons.

6. Bills and notes ⬅469—Petition held to insufficiently allege giving of notice of dishonor to defendants secondarily liable.

In suit against drawers and indorsers, who were secondarily liable on bills of exchange, general allegations in petition that defendants, though often requested, refused and still refuse to pay demand, *held* to insufficiently allege that notice of dishonor was given as required by Negotiable Instruments Act, §§ 102–104 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—102 to 6001—104), and especially as petition affirmatively shows that principal obligor was not notoriously insolvent.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the First National Bank of Giddings against the Lee County Cotton Oil Company and others. From a judgment of the Court of Civil Appeals (250 S. W. 313), affirming a judgment sustaining a general demurrer to the petition, plaintiff brings error. Affirmed.

Watson & Simmang, of Giddings, for plaintiff in error.

F. W. Moore and Geo. Shelley, both of Austin, and Bowers & Bowers, of Caldwell, for defendants in error.

SHORT, J. This case involves the legal sufficiency of the plaintiff in error's petition, tested by general demurrer, which the trial court sustained, and whose judgment was affirmed by the Court of Civil Appeals. 250 S. W. 313. The trial court, as well as the Court of Civil Appeals, reached the conclusion that the petition failed to allege facts sufficient to properly fix the liability of the drawers and indorsers of certain drafts and bills of exchange, the basis of the plaintiff in error's suit. The petition is quite lengthy, but it may be briefly summarized to be a suit by the plaintiff in error against the Lee County Cotton Oil Company, a private corporation, the Southern Cotton Seed Company, a partnership composed of Oscar Robinson

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and others, whose names were unknown, the Caldwell Oil Mill Company, a private corporation, the Giddings Cotton Oil Company, a private corporation, Gerhard Zoch, Zwerneman & Schkade, a partnership composed of A. A. Zwerneman and C. H. Schkade, Fritz Miman, P. S. Grogan, L. C. Smith, and William Wenke. There was an application, also, to the place the defendant in error Lee County Cotton Oil Company in the hands of a receiver, which was granted. Judgment was rendered by default in favor of plaintiff in error against P. S. Grogan, Giddings Oil Company, and Zwerneman & Schkade, and these parties pass out of the case and will not be hereafter mentioned. The defendants in error Miman and L. C. Smith were dismissed, and likewise they will not hereafter be mentioned.

Upon a trial, after certain pleas of privilege presented by defendants in error Wenke and Robinson had been overruled, as well as pleas of misjoinder of parties and causes of action by the same parties, which action of the court is not in a condition to be reviewed by us, then came on to be heard the general demurrers, separately presented, of the last-named defendants in error and the Caldwell Oil Mill Company and Gerhard Zoch, which were sustained, and, the plaintiff in error having failed and refused to amend, the case was dismissed against these parties, and judgment rendered accordingly, together with the dismissal of the receivership proceedings against the defendant in error Lee County Cotton Oil Company.

The count against William Wenke in the petition alleges that on the 15th day of February, 1921, William Wenke executed a bill of exchange payable to the order of the Winchester State Bank on the Lee County Cotton Oil Company for the sum of $526, with exchange, payable 90 days after sight, which was duly accepted on the 17th day of February, 1921, by the Lee County Cotton Oil Company, which was paid by the plaintiff in error, the holder and owner of it in due course, whereby William Wenke, as drawer of the bill of exchange, and the Lee County Cotton Oil Company, as acceptor, became liable and bound to pay the plaintiff in error the sum of money therein specified, with exchange. This bill of exchange was set out in the petition. It is further alleged that the Lee County Cotton Oil Company was unable to pay its debts in due course, but it had certain property subject to execution, the value of which could not be realized, so as to protect all the creditors, on account of financial stringency then alleged to be existing, and it also alleged gross mismanagement on the part of the Lee County Cotton Oil Company. The petition contained this general allegation:

"That said notes, and each of them, together with each of the above-described drafts and bills of exchange, are now past due and wholly unpaid, and the defendants and each and all of them, tho often requested, have hitherto failed and refused, and still refuse, to pay the same, or any part thereof, to the plaintiff's damage in the sum of twenty-five thousand dollars ($25,000.00)."

The above quotation from the plaintiff in error's petition is at the end of the twenty-second paragraph, and is then followed by paragraphs 23, 24, 25, 26, and 27, which relate exclusively to the receivership.

The counts against the defendant in error Oscar Robinson (also sued as the Southern Cotton Seed Company) are numbered in the plaintiff's petition 4, 5, 6, 7, 8, 9, and 10. Each count represents a separate transaction, in each of which it is alleged in substance that on a certain day the defendant in error Southern Cotton Seed Company, acting by and through Oscar Robinson, made its certain bill of exchange, payable to the Southern Cotton Seed Company, and drawn on the Lee County Cotton Oil Company, for a certain sum of money, with exchange, payable 90 days after sight, each of which was duly accepted by the Lee County Cotton Oil Company, and in due course was paid by the plaintiff, who was alleged to be the owner, whereby the Southern Cotton Seed Company, as maker, and the Lee County Cotton Oil Company, as acceptor, became liable to plaintiff to pay each of said sums of money in each of said bills of exchange specified, none of which had been paid, and on each of which was indorsed, "Southern Cotton Seed Company, by Oscar Robinson, Mgr." We here copy one of these instruments, all being of similar character, but of different dates and different amounts, to wit:

"Southern Cotton Seed Company of Hearne,
"Hearne, Tex., 1—28—21.

"At ninety days' sight pay to the order of ourselves $595.23, five hundred ninety-five and 23/100 dollars, with exchange, value received, and charge to account of
"Southern Cotton Seed Company,
"Per Oscar Robinson.
"To Lee County Cotton Oil Company,
"Giddings, Texas."

Each of these bills was also alleged to have been duly accepted by the Lee County Cotton Oil Company by indorsing across the face of same the following:

"Accepted [with date]. Lee County Cotton Oil Co., C. M. Merchant, Mgr."

The counts against the defendant in error the Caldwell Oil Mill Company are numbered in the plaintiff's petition in paragraphs 11, 12, 14, and 15, in which it is alleged that the defendant in error Caldwell Oil Mill Company, acting through its manager, H. W. Bates, made its certain bill of exchange payable to the order of the Caldwell Oil Mill Company and drawn on the defendant in

error Lee County Cotton Oil Company for a certain sum of money, with exchange, payable 90 days after sight, which was regularly accepted by the Lee County Cotton Oil Company in due course of business, and paid by the plaintiff in error, which was alleged to be the owner of the same, whereby the Caldwell Oil Mill Company, as maker, and the Lee County Cotton Oil Company, as acceptor of same, became liable and bound to pay plaintiff in error the sum of money in said bill of exchange specified, together with exchange, no part of which had been paid. We copy one of these instruments to illustrate the character thereof, to wit:

"$459.10.        Caldwell, Texas, 1—17—1921.

"At ninety days' sight pay to the order of Caldwell Oil Mill Company, Caldwell, Texas, four hundred fifty-nine dollars and ten cents, with exchange, value received, and charge to the account of
        "Caldwell Oil Mill Company,
            "H. W. Bates, Gen'l Manager.
"To Lee County Cotton Oil Co.,
    "Giddings, Texas."

This bill of exchange is alleged to have been indorsed by the Caldwell Oil Mill Company, by H. W. Bates, Manager, and also indorsed across the face of the same was the following:

"Accepted [with date]. Lee Co. C. O. Co., per C. M. Merchant, Mgr."

The petition against the defendant in error Zoch is in two counts, numbered 16 and 17, in the first of which it is alleged that the defendant in error Zoch made a certain bill of exchange, payable to the order of the Citizens' State Bank of Giddings on the Lee County Cotton Oil Company for the sum of $429.38, with exchange, payable 90 days after sight, which was duly accepted by the Lee County Cotton Oil Company in due course of business and paid by the plaintiff in error, who is alleged to have been the owner and holder, while the next count contains similar allegations, with different dates and amounts, the amount being $469.70, one of which is in the following language and the other being similar, to wit:

        "Citizens' State Bank of Giddings,
    "Giddings, Texas, February 26, 1921.

"At ninety days after sight pay to the order of Citizens' State Bank, Giddings, Texas four hundred twenty-nine and 38/100, with exchange, value received, and charge to the account of        [Signed] Gerhard Zoch.
"To Lee County Cotton Oil Company,
    "Giddings, Texas."

It is alleged that the suit was filed before the first term of the district court of Lee county after dishonor of each of said bills of exchange by nonpayment, but the petition did not allege that notice of dishonor had been given the drawers and indorsers in the manner and within the time as required by

274 S.W.—9

articles 6001a101–6001a104 (sections 101–104 of the Negotiable Instruments Act), Complete Texas Statutes 1920, or Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—101 to 6001—104, to fix their liability on the drafts sued on.

The trial judge, in sustaining the general demurrer to appellant's petition, held that the Uniform Negotiable Instruments Act of 1919, by article 7, §§ 89–118, both inclusive, Acts 36th Legislature, pp. 200, 203 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—89 to 6001—118), repealed article 579, Revised Civil Statutes of 1911, which latter act fixed the liability of drawers and indorsers of notes and bills of exchange by bringing suit at the first term of the court having jurisdiction after the cause of action accrued, or at the second term, good reason being shown why it was not brought at the first term, and, further, because of the failure of the petition to allege that notice so fixing the liability of appellees herein as required by the Uniform Negotiable Instruments Act of 1919 had been given.

Plaintiff in error's third assignment of error is as follows:

"The court committed material error in holding that article 579 of the Revised Statutes of 1911 was repealed by the Negotiable Instruments Act of the Thirty-Sixth Legislature of the state of Texas, and that the plaintiff could not fix and establish the liability of the makers and drawers of the bills of exchange by bringing suit, under said article No. 579, to the first term of the court after the maturity of the time drafts or bills of exchange."

[1-3] In construing an act of the Legislature, the intention of the lawmaking power must govern as discovered by the wording of the act itself, together with the purpose sought to be attained by the enactment of the law. If this intention is plainly evidenced according to these rules, then it is the duty of the court to uphold the intention and construe the law in accordance therewith. Inasmuch as the question of repeal is always one of relative intent, an express declaration that a particular statute is repealed will not be given effect, where it is apparent that the Legislature did not so intend.

"Where an act is passed covering the whole of a particular subject or field of legislation, it is customary to insert a general clause repealing 'all acts or parts of acts inconsistent therewith,' and such a clause is effective in repealing inconsistent enactments, in the absence of any constitutional prohibition against such method of repeal; but the repeal extends only to those acts on the same subject, or parts of such acts, clearly inconsistent and irreconcilable with the provisions of the repealing act, and only to the extent of the conflicting provisions. A statute is repealed by implication whenever it becomes apparent from subsequent legislation that the Legislature does not intend the earlier act to remain in force. * * * Though repeals by implication are not favored, it necessarily re-

sults in any case of repugnancy or inconsistency between two successive statutes, or in any case where the intention of the Legislature is manifest that a later statute should supersede an earlier one." American & English Encyclopedia of Law, Vol. 26, p. 717.

This doctrine is approved in the following cases: Berry v. State, 69 Tex. Cr. R. 602, 156 S. W. 635; St. Louis S. W. Ry. Co. v. Kay et al., 85 Tex. 558, 22 S. W. 665; Ex parte Coombs, 38 Tex. Cr. R. 656, 44 S. W. 854; Dickinson v. State, 38 Tex. Cr. R. 479. 41 S. W. 759, 43 S. W. 520; State v. Travis County, 85 Tex. 445, 21 S. W. 1029; Ex parte Valasquez, 26 Tex. 179; Cain v. State, 20 Tex. 364; Carolan v. McDonald, 15 Tex. 329; Rogers v. Watrous, 8 Tex. 65, 58 Am. Dec. 100. In the case of St. Louis S. W. Ry. Co. v. Kay et al., Justice Gaines, speaking for the Supreme Court of Texas, in discussing a similar question, uses this language:

"If article 4227, as amended, repeals article 279, it is a repeal by implication. Such repeals are not favored, and unless there be a repugnancy or inconsistency between two statutes, the general rule is that the latter will not repeal the former in the absence of express words to that effect. But the question of repeal, like every other question arising upon the construction of a statute, must be solved by determining as near as may be the intent of the Legislature"—citing Rogers v. Watrous, 8 Tex. 65; Ex parte Valasquez, 26 Tex. 178; Cain v. State, 20 Tex. 355.

He continues in the same case:

"In Rogers v. Watrous [8 Tex. 65, 58 Am. Dec. 100], supra, Judge Wheeler says: 'A subsequent statute revising the subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. So though a subsequent statute be not repugnant in its provisions to a former one, yet if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statute.'"

The general rule, enunciated above by the American & English Encyc. of Law, supra, and approved by the Supreme Court of this state by Judge Wheeler, which was followed by Judge Gaines, as above stated, is also enunciated in Chiles v. State, 1 Tex. App. 32, holding the act prohibiting tenpin alleys to be repealed by a later one providing for licensing them, and in Dickinson v. State, 38 Tex. Cr. R. 479, 41 S. W. 759, 43 S. W. 520, holding that the game law is impliedly repealed by a later statute, and in Tunstall v. Wormley, 54 Tex. 481, holding an act concerning churches is repealed by a law concerning corporations. We have been unable to find any authority bearing directly on the subject which holds to the contrary.

In the case of State v. Houston Oil Com. of Texas (Tex. Civ. App.) 194 S. W. 432,

Chief Justice Key, in discussing a similar question, says:

"The rule is well settled that, when a subsequent statute shows by its context that it was intended to embrace all the law upon the subject dealt with, such statute will, by implication, repeal all former laws relating to the same subject. The correctness of that rule is not controverted, and it is unnecessary to cite authorities in support of it."

[4] The purpose of article 579 of the Revised statutes of 1911 was to provide a means of fixing liability of drawers and indorsers of bills of exchange other than by protest and notice as required by the custom of the law merchant in use at the time said statute was originally enacted in the year 1848. Vernon's Ann. Civ. St. Supp. 1922, art. 6001—83, title 96½ of the Negotiable Instruments Act enacted by the 36th Legislature, uses this language:

"The instrument is dishonored by nonpayment when:
"1. When it is duly presented for payment and payment is refused or cannot be obtained; or
"2. Presentment is excused and the instrument is overdue and unpaid."

Article 6001—84 of the same act provides as follows:

"Subject to the provisions of this act when the instrument is dishonored by nonpayment, an immediate right of recourse to all parties secondarily liable thereon accrues to the holder."

Article 6001—89, is as follows:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must have been given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Article 6001—102, provides that:

"Notice may be given as soon as the instrument is dishonored; and unless delay is excused as hereinafter provided, must be given within the time fixed by this act."

Article 6001—103, explains the previous article and fixes the time within which the notice must be given by the use of the following language:

"Where the person giving and the person to receive notice reside in the same place, notice must be given within the following times:
"1. If given at the place of business of the person to receive notice, it must be given before the close of business hours on the day following.
"2. If given at his residence, it must be given before the usual hours of rest on the day following.
"3. If sent by mail, it must be deposited in the post office in time to reach him in usual course on the day following."

Article 6001—104, provides:

"Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times:

"1. If sent by mail, it must be deposited in the post office in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter.

"2. If given otherwise than through the post office, then within the time that notice would have been received in due course of mail, if it had been deposited in the post office within the time specified in the last subdivision."

The Uniform Negotiable Instruments Act of 1919, under head of General Provisions, also uses this language:

"All acts and parts of acts inconsistent with this act are hereby repealed."

In the caption of the Negotiable Instruments Act of 1919 the following language is used:

"An act to make uniform the law of negotiable instruments in the state of Texas, repealing all laws and parts of laws in conflict herewith and declaring an emergency."

Evidently, the purpose of these provisions of this act of 1919 is the same as that of article 579, Revised Civil Statutes of 1911, which provides as follows:

"The holder of any bill of exchange or promissory note, assignable or negotiable by law, may secure and fix the liability of any drawer or indorser of such bill of exchange, and every indorser of such promissory note, without protest or notice, by instituting suit against the acceptor of such bill of exchange, or against the maker of such promissory note, before the first term of the district or county court to which suit can be brought, after the right of action shall accrue; or by instituting suit before the second term of said court, after the right of action shall accrue, and showing good cause why suit was not instituted before the first term next after the right of action accrued."

Article 579 has reference purely to the method prescribed by the act of 1919, in the absence of protest of making liable the acceptors and indorsers of negotiable bills of exchange. The act of 1919 not only prescribes another and different and inconsistent method of accomplishing this purpose from that of article 579, but also provides a uniform law of negotiable instruments in the state. The purpose of the act of 1919 is stated to be to make this law of negotiable instruments uniform and expressly repeals all acts and parts of acts inconsistent with this act. This language is peculiarly expressive, in view of the fact that in addition to article 579, there are scattered through the Revised Civil Statutes other acts more or less relating to negotiable instruments. Evidently the Legislature intended by this language to include in the repealing clause each and every other previous expression of the lawmaking power on the subject of negotiable instruments which are inconsistent with the express provisions of the Negotiable Instruments Act of 1919. It was a comprehensive and yet a brief way of declaring this intention. Moreover, the law of 1919 is so specific as to the method whereby indorsers of negotiable instruments might be notified of the dishonor thereof, and is so different from the method prescribed in article 579 that no other conclusion can be reached than that it was the intention of the Legislature to repeal article 579. Such being our opinion, we overrule the third assignment of error above quoted.

The second assignment of error is as follows:

"The court committed material error in holding that plaintiff could not have and maintain this action against the makers and drawers of said bills of exchange in the plaintiff petition fully described, for the reason that plaintiff alleged in said petition that it notified indorsers and makers and drawers of said bills of exchange, as required by the Negotiable Instruments Act of 1919."

The only allegation upon which plaintiff in error relies in support of its second assignment of error is:

"That said notes and each of them, together with each of the above-described drafts and bills of exchange, are now past due and wholly unpaid; and the defendants, and each and all of them, though often requested, have hitherto failed and refused, and still refuse. to pay the same or any part thereof, to the plaintiff's damage," etc.

It is claimed that this allegation complies with the requirements of the Negotiable Instruments Act sufficiently to allege that notice of dishonor was given the drawers and indorsers in the manner prescribed thereby in articles 6001—102 to 6001—104, Vernon's Ann. Civ. St. Supp. 1922. In Riker v. Freeman, Dall. Dig. 584, Justice Jones uses this language:

"In the examination of the authorities upon this important branch of commercial law by which these cases are to be determined, we find it well settled that, in order to entitle the holders to a suit against the drawers, they must shew a demand of the drawee and reasonable notice of default of payment, and to enable the holders to prove notice of demand and failure to pay, the allegations must be plainly and distinctly set forth in their petition. It is unnecessary for the court, in these cases, to go into investigation of what may be considered reasonable notice, as no notice appears to have been alleged by the plaintiffs or attempted to be proven. The isolated question is then presented: Could the plaintiffs in the court below recover upon the bill sued on, in the absence of the allegations of demand and notice of nonpayment, duly supported by proof? We think not."

The learned justice then cites Mr. Kent, and discusses the object of giving the notice and the purpose of the law in requiring the holder of the paper to enable the drawer and indorser to obtain security from those persons to whom they are entitled to look for indemnity. It will be seen that this purpose is evidenced by both article 579 of the Revised Statutes of 1911 and the act of 1919. It will also be noticed that the petition of plaintiff in error affirmatively shows that the principal obligor, the Lee County Cotton Oil Company, was not notoriously insolvent. Chief Justice Gaines, in Smith v. Ojerholm, 93 Tex. 35, 53 S. W. 341, says:

"The term 'insolvency' has widely different meanings. When a trader is unable to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note, although he might have ample property to satisfy an execution against him. It is in a case where the principal has property, but is not in a condition to meet his debts as they fall due, that the necessity is the more urgent to bring suit for the protection of the indorser. It cannot be said that a debtor is insolvent, within the meaning of our law, as to his creditor, when he holds property against which the creditor may enforce a lien for the payment of the debt."

So, under the allegations of the petition, the Lee County Cotton Oil Company was not insolvent within the meaning of the law. In other words, it was not notoriously insolvent. It was, not entirely without means for the satisfaction of the claims of creditors; it did have some property subject to the demand of its creditors. There was, therefore, some reason why drawers and indorsers should have been notified within the time and in the manner provided by the law of the dishonor of the paper. To state a cause of action against the drawers and indorsers, as such, it was clearly the duty of the plaintiff in error to allege and prove that condition of affairs which placed it in a position to invoke the protection of the law and establish the liability of the defendants in error as drawers and indorsers by alleging in terms that notice had been given to the defendants in error as indorsers and drawers such as the law required it to give.

[5] Generally speaking, where it is sought to charge the drawer or the indorser, presentment, demand, nonpayment, and notice thereof are conditions precedent to his liability, and must be alleged, or a sufficient excuse for the omission must be stated, and it is immaterial that the instrument indorsed was past due at the time of the indorsement. However, there is an exception to this general rule where the suit is on a promissory note, or where the drawer and drawee are the same person. King v. Cornell, 106 U. S. 395, 1 S. Ct. 312, 27 L. Ed. 60; Buse v. Bart-

lett, 1 Tex. Civ. App. 335, 21 S. W. 54; Galveston, H. & H. R. Co. v. Anderson (Tex. Civ. App.) 229 S. W. 1001; Dallas Consol. Electric St. R. Co. v. State, 102 Tex. 575, 120 S. W. 997; Jessee v. De Shong (Tex. Civ. App.) 105 S. W. 1011; 8 Corpus Juris, pp. 635, 636; Harbison v. State Bank, 28 Ind. 133, 92 Am. Dec. 308; Hoyland v. Middlesborough National Bank, 137 Ky. 682, 126 S. W. 356; Frosh v. Holmes, 8 Tex. 29; Sydnor v. Gascoigne, 11 Tex. 455; article 6001—70 to 6001—114, Vernon's Ann. Civ. St. Supp. 1922 (sections 70—114 of the Negotiable Instruments Act of 1919).

In the instances last stated under the statute as well as the decisions, it need not be alleged in the petition by the holder of a dishonored piece of paper that notice has been given of the dishonor of the paper in order to fix liability of the indorser. In other words, where the party is primarily liable, such an allegation is not necessary; it is otherwise where he is secondarily liable. In the case of Smith v. Richardson Lumber Co., 92 Tex. 448, 49 S. W. 574, Judge Brown, speaking for the Supreme Court, said:

"If the plaintiff's petition had not contained the allegation that J. C. Tyree was notoriously insolvent at the time the suit should have been brought to fix the liability of the indorser, no cause of action would have been shown against W. B. B. Smith, because it appeared from the allegations in the petition that suit was not brought either to the first or the second term of the court after the debt matured. It devolved upon the plaintiff to allege and prove in this case one of the exceptions expressed in article 1204, R. S. 1895, in order to maintain this action against the indorser, who was discharged by the failure to sue at the first or second term of the court, unless one of the exceptions which relieve the holder of the note from bringing such suit existed." Fisher v. Phelps, 21 Tex. 55; Elliott v. Wiggin, 16 Tex. 596.

Judge Brown, in speaking for the Supreme Court in Laas v. Seidel, 95 Tex. 442, 67 S. W. 1015, says:

"A general demurrer has the effect to admit as true for that purpose all facts which are alleged in the pleading challenged, as well as all facts which may reasonably be inferred from the facts alleged. If a fact necessary to be proved to sustain a recovery on the part of the plaintiff be neither alleged in the petition, nor fairly inferable from facts alleged, a demurrer to the petition must be sustained. Canales v. Perez, 65 Tex. 293; Warner v. Bailey, 7 Tex. 517. If the plaintiff in this case had alleged that there was no administration upon the estate of the decedent, and no necessity for such administration, but had failed to prove it upon a trial, judgment must have been given for the defendant. Can the existence of those facts be inferred from the allegations of the petition in this case? It is claimed that the allegation that the estate was solvent would support the inference that 'there was no administration, nor necessity for administration.' The estate might be solvent, and yet there

would be a necessity for administration to pay the debts, and to settle the affairs of the estate, to get it in proper shape for distribution among the heirs."

[6] It will be seen, from what has been said as to the allegations in the plaintiff's petition, that there was an absence of any allegation that notice of dishonor had been given the drawers and indorsers who were secondarily liable in the manner provided in the Negotiable Instruments Act of 1919, and also that there was an absence of any allegation that any of the exceptions set forth in said act existed which relieved the plaintiff in error from the duty of making such allegation and proof. It is further evidenced from the character of the instruments set out in the plaintiff in error's petition, complaining of the defendants in error Zoch and Wenke, Oscar Robinson, who is also sued as the Southern Cotton Seed Company, and the Caldwell Oil Mill Company, that it was incumbent upon the plaintiff in error to embrace in its petition an allegation to the effect that the defendants in error had been given notice of the dishonor of the bills of exchange drawn by them as drawers, since these bills were drawn on parties other than themselves, and all the authorities are to the effect that the defendants in error were entitled to be given notice of the dishonor of the bills of exchange in the manner and within the time prescribed by the Negotiable Instruments Act of 1919, some of the provisions of which we have quoted in this opinion, and that the trial court did not err in sustaining the general demurrer as to the defendants in error, and the Court of Civil Appeals is correct in affirming the judgment of the trial court. We therefore overrule the second assignment of error.

Assignments of error 1 and 4 embrace in substance the same matters stated in assignments of error 2 and 3, which we have discussed, and, as all the questions presented in the assignments of error have been discussed, we content ourselves with saying that they are overruled, except where they have been inferentially sustained, as stated in this opinion. Negotiable Instruments Act, title 96½, articles 6001—1 to 6001—197, Vernon's Ann. Civ. St. Supp. 1922; Laas v. Seidel, 95 Tex. 442, 67 S. W. 1014; Smith v. Richardson Lumber Co., 92 Tex. 448, 49 S. W. 574; Dunn v. Townsend (Tex. Civ. App.) 163 S. W. 312; Raymond v. Mann, 45 Tex. 301; 8 Corpus Juris, pp. 636, 637, par. 893.

We therefore recommend that the judgments of the Court of Civil Appeals and of the District Court be affirmed.

The Supreme Court on April 1, 1925, entered its judgment, upon our recommendation, affirming in part and reversing in part the judgment of the Court of Civil Appeals

and that of the district court, and certain fundamental matters affecting the legal rights of the defendants in error Caldwell Oil Mill Company and Oscar Robinson, sued as the Southern Cotton Seed Company, which were erroneously decided by us and adopted by the Supreme Court, having been duly called to our attention, we recommend that the judgment of the Supreme Court entered in this case on April 1st be withdrawn, and that judgment affirming the judgments of the Court of Civil Appeals and of the district court as to all the defendants in error be substituted.

CURETON, C. J. On motion for rehearing. Motion for rehearing granted, and judgments of the district court and Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.