Jon Kenneth FERGUSON et
al., Appellants,

v.

W. E. McCARRELL et al., Appellees.

No. 12896.

Court of Civil Appeals of Texas,
Austin.

May 9, 1979.

Rehearing Denied June 6, 1979.

T. Turner Pope, III, Kamp & Pope, Houston, for appellants.

Fred Clark, New Braunfels, for appellees.

O'QUINN, Justice.

This appeal is from judgment in district court in three lawsuits, consolidated for trial, brought in 1976 by appellees alleging that appellants endorsed and guaranteed payment of three promissory notes aggregating $80,850, made originally by Associated Equities, Inc., payable to W. E. McCar-

rell in the amount of $45,850 and to Vince Narcisso in the sum of $35,000.

Under seven points of error the appellants, Jon Kenneth Ferguson and Johnny B. Ferguson, appeal from a judgment below for appellees in the sum of $117,555.58, including interest and attorney's fees.

This case went to trial April 4, 1978, at which time appellees, over objection by appellants, were permitted by the court to file a supplemental petition alleging that Associated Equities, Inc., maker of the notes sued on, ". . . is presently and notoriously insolvent. Such defendant has filed, under Chapter 10, Title 11, U.S.C.A. a petition for corporate reorganization and accordingly has stated that the corporation is insolvent or unable to pay its debts as they mature."

The record shows that on the day prior to the beginning of trial the court, over appellants' objection, granted appellees' motion for severance and separate trials as to Associated Equities, and ordered the ". . . causes of action asserted against . . . Associated Equities, Inc. . . . severed from the causes of action alleged against John [sic] B. Furgeson [sic] and John [sic] Kenneth Furgeson [sic] in each of the . . causes and ·a separate trial . . . ordered as to such corporate Defendant . . ."

Trial proceeded thereafter to verdict and judgment without Associated Equities, Inc., as a party, and no judgment was taken against the corporation as maker of the note. Upon affirmative answers by the jury to three special issues inquiring whether the three promissory notes, which appellants had endorsed and guaranteed, were due and owing in each instance to the alleged holders of the notes, the trial court entered judgment against the endorsers and guarantors for principal, accrued interest, and attorney's fees in the aggregate sum of $117,555.58.

Appellants bring seven points of error under which their main contention is that it was improper to sever the corporate maker of the notes, and proceed to judgment against the parties conditionally liable, without pleading and proof that the corporation was "actually or notoriously insolvent" within the terms of Articles 1986 and 2088, V.A.C.S.

Under provisions of Article 1986, "The acceptor of a bill of exchange, or a principal obligor in a contract, may be sued either alone or jointly with any other party who may be liable thereon; but *no judgment shall be rendered against a party not primarily liable* on such bill or other contract, *unless judgment be also rendered against such* acceptor or other *principal obligor*, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided" [in Article 2088]. (Emphasis added).

Article 2088, covering instances where discontinuance of suit is as to the principal obligor, provides:

"*Where a suit is discontinued as to the principal obligor, no judgment can be rendered therein against an indorser, guarantor*, surety or drawer of an accepted bill *who is jointly sued, unless it is alleged and proved* that such principal obligor resides beyond the limits of the State, or in such part of the same that he cannot be reached by the ordinary process of law, or that his residence is unknown and cannot be ascertained by the use of reasonable diligence, or that he is dead *or actually or notoriously insolvent*." (Emphasis added).

Appellees did not file a brief and failed to make appearance and oral argument before this Court. The record clearly shows, however, that appellees tried the case on the theory that Associated Equities, Inc., had been shown to be insolvent, and that appellees as plaintiffs below were entitled under Article 2088 to proceed against the appellants as guarantors of the obligation without rendition of judgment, in addition, against Associated Equities, Inc., as the principal obligor. Appellees alleged in their supplemental petition, filed the day trial started, that Associated Equities was "presently and notoriously insolvent."

The defendants below, including the guarantors who are now appellants, filed

their plea in abatement immediately prior to the trial date due to "the automatic stay of all proceedings against Associated Equities, Inc.," by reason of its voluntary petition filed a month earlier in federal bankruptcy court under Chapter 10. The purpose of the bankruptcy proceedings is to enable the corporation to reorganize and sell its subdivision lots "at a value vastly exceeding the amount owing to both secured and unsecured creditors and obtain a profit for the corporation and its owners."

The record contains notice of initial meeting of creditors of Associated Equities and reveals that assets ($1,900,000.00) of the corporation exceed its liabilities ($1,619,089.22) by $280,910.78. The corporation conceded at the time of filing its voluntary petition that the petitioner was "unable to pay its debts as they mature."

Appellants contend that appellees failed to show that Associated Equities, Inc., was insolvent, as required by Article 2088 if judgment is taken against the guarantors and not against the principal obligor, and that the trial court erred in not following the holding of the Supreme Court of Texas in *Smith v. Ojerholm*, 93 Tex. 35, 53 S.W. 341 (1899), construing the statutory rule in effect at that time which was substantially in the same language found in the present law. Appellants also argue that a court of civil appeals in 1976 applied the rule stated in *Ojerholm* under facts dealing with a principal obligor, as in the present case, having a petition in bankruptcy pending in the bankruptcy court showing its assets greater than its liabilities. *Cook v. Citizens National Bank*, 538 S.W.2d 460, 466 (Tex. Civ.App. Beaumont 1976, no writ).

The Supreme Court, in *Ojerholm*, stated the reason behind enactment of the law, which in substantially the same language has been a part of the written laws of Texas nearly 140 years, in this fashion: "The reason for relieving the indorsee from the necessity of suing the principal debtor in the excepted cases was either that a suit against him was not practicable, *or that it would result in no good*. Hence we think that it cannot be said that a principal is insolvent, within the meaning of that statute, when any part of the debt can be made by execution against him." (Emphasis added). (53 S.W. 341).

"When a trader is unable," the Supreme Court continued, "to meet his obligations in the regular course of business, he is technically said to be insolvent. Should we apply that meaning to our statute, the indorsee would, in some cases, be excused from suing the maker of the note, although he might have ample property to satisfy an execution against him. . . . It cannot be said that a debtor is insolvent, within the meaning of our law, as to his creditor, when he holds property against which the creditor may enforce a lien for the payment of the debt." (53 S.W. 341–342).

■ We have carefully reviewed the terms of the written contracts in this case in the light of recent decisions of the Supreme Court of Texas and conclude that appellants, by their agreement to "endorse and guarantee the payment of this note," became primary obligors, permitting the holders of the notes to enforce payment against appellants without the necessity of proceeding against Associated Equities. *Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.Sup.1976); *Reece v. First State Bank of Denton*, 566 S.W.2d 296 (Tex.Sup.1978); *Hopkins v. First National Bank at Brownsville*, 546 S.W.2d 84 (Tex.Civ.App. Corpus Christi), *writ ref'd n. r. e. per curiam*, 551 S.W.2d 343 (Tex.1977).

In *Bohart* the Supreme Court reviewed the effect on contracts of guaranty by the terms of Section 3.416(a), Texas Business and Commerce Code (1968). That section provides: " 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party."

In *Hopkins* the Court described the *note* and a *guaranty of payment* as separate undertakings in the sense that the guarantor may be sued apart from the maker because a guarantor of payment becomes

primarily liable and waives requirement that the holder of the note take action against the maker as a condition precedent to the guarantor's liability. (551 S.W.2d 345).

In *Reece* the Court pointed out that in *Bohart,* because there "was an absolute and unconditional guaranty of *payment,* this Court held that the guarantor was not freed from liability because of the forged signature of the maker. The reasoning behind this," the Court added, "is that a guarantor of payment is akin to a co-maker in that both are primary obligors, and the holder of the note can enforce it against either party." (566 S.W.2d 297).

In the present case the three notes at the outset provide "For value received, I, we, or either of us, the undersigned, promise to pay . . ." The body of the notes specify amounts, interest rates, dates for payment, place of payment, acceleration at option of holder in event of failure to pay interest or principal installment, and attorney's fees. The notes are signed and attested properly for the corporation, Associated Equities, Inc., followed by the statement, "I, we, or any of us, individually and collectively endorse and *guarantee the payment of this note,*" (emphasis added), to which is appended the signatures of the several guarantors.

We hold that this contract, as found in the three notes, falls within the doctrine of *Bohart, Hopkins,* and *Reece* which makes the guarantors primary obligors, subject to suit for collection by the holders without necessity of joinder of, or judgment against, the corporate maker.

Appellants' points of error one through five, under which they contend the trial court erred in severing from this suit, Associated Equities, maker of the notes, and in rendering judgment against appellants without also holding the corporate maker of the notes, are overruled.

Under points six and seven appellants claim error in submitting a special issue on the McCarrell note, in the amount of $10,-850, and in rendering judgment on the note against appellants.

Appellants argue that since the original note was not offered or received in evidence and there was no evidence that McCarrell was holder of the note, the special issue was erroneously submitted and it was error to render judgment on the jury finding that the note for $10,850 signed by appellants was due and owing to W. E. McCarrell.

That McCarrell was holder of the note and had not transferred it to any other person was established at the trial by the testimony of McCarrell on two occasions. When asked, "On this note for the $10,850, do you presently own that note, sir?" McCarrell replied, "Yes, sir." McCarrell also testified that no part of the note had been paid and that he had made demand for payment.

In response to requests for admissions, the record shows, appellants admitted that the note for $10,850 had been executed by Associated Equities on June 21, 1974, "payable to W. E. McCarrell"; that a "true and correct copy of the promissory note . . is attached to Plaintiff's Original Petition on file in this cause"; that the note "was delivered to the Plaintiff, his agent, servant, or employee, by one or more of the Defendants"; and that McCarrell had "made demand upon Defendants . . . to pay the promissory note . . ."

By statutory authority, reproductions of written instruments, by photostatic or other processes, which accurately reproduce originals of the written instruments, may be used in trials where the party using the copy offers the original "or reasonably accounts for its absence, or *where there is no bona fide dispute as to its being an accurate reproduction of the original.*" (Emphasis added). Article 3731c, V.A.C.S.; Acts 1959, 56th Leg., p. 867, ch. 393, sec. 1.

McCarrell testified that he had the original at his home in Tulsa, Oklahoma, and offered to produce it later. By responses to request for admissions, appellants agreed that the photographic type of copy attached to McCarrell's petition was a "true and correct copy of the promissory note." With the copy in hand, McCarrell testified to its essential contents, as well as to the consideration forming the basis for the note, and

testified that appellants signed the note pursuant to McCarrell's insistence, prior to the making of the note, that appellants individually guarantee payment. As observed earlier, McCarrell also testified that he was. at the time of trial owner of the note for $10,850, which had not been paid after demand for payment.

It appears there can be no *bona fide* dispute that the reproduction attached to McCarrell's petition was an accurate reproduction of the original. The requests and responses as to all three notes were introduced without objection at the trial. Appellants are bound by their admissions.

We conclude that McCarrell proved his cause of action in the suit for collection of the note for $10,850, and appellants' points of error under which they make a contrary contention are overruled. Rule 169, Texas Rules of Civil Procedure, authorizes the "request for the admission . . . of the genuineness of any relevant documents," the primary purpose of the Rule, as pointed out by the Supreme Court, being "to simplify trials by éliminating matters about which there is no real controversy." *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.,* 490 S.W.2d 818, 825 (Tex.Sup. 1972).

The judgment of the trial court is affirmed.

Affirmed.