Frederick C. FORD, a/k/a Fred Ford
and Roberta Ford, Appellants,

v.

Danny DARWIN, Appellee.

No. 05–87–01310–CV.

Court of Appeals of Texas,
Dallas.

March 8, 1989.

Rehearing Denied April 11, 1989.

Howard V. Tygrett, Jr., Dallas, for appellants.

Louis H. Altman, Baskin & Novakov, Dallas, for appellee.

Before KINKEADE, BURNETT[1] and WHITTINGTON[2], JJ.

## ON MOTION FOR REHEARING

KINKEADE, Justice.

The Fords' motion for rehearing is granted. Our prior opinion is withdrawn. The following is now the opinion of the Court.

Danny Darwin sued Frederick and Roberta Ford on a "promissory note agreement." The trial court rendered judgment against the Fords. The Fords' primary argument on appeal is that Darwin could not sue them as guarantors of the contract without either joining the principal debtor or proving that the principal debtor was actually or notoriously insolvent. We disagree; therefore, we affirm the judgment of the trial court.

Darwin and Frederick Ford entered the following agreement:

## PROMISSORY NOTE AGREEMENT

by and between

Danny Darwin, hereinafter called (Lender)

and

DFW Valet Parking–South, Inc. and Frederick C. Ford and Arnold Polizzi hereinafter called (Borrower)

This Promissory Note Agreement is entered into as of November 15th, 1984 Lender of Arlington, Texas and Borrower, of Irving, Texas and represents the entire agreement of the parties hereto.

1. The Honorable Joe Burnett, Justice, succeeded the Honorable Bill J. Stephens, at the expiration of his term, which was between the time the case was submitted and the time it was decided. Justice Burnett has reviewed the briefs and the record before the court.

2. The Honorable John Whittington, Justice, succeeded the Honorable Nathan L. Hecht, at the expiration of his term, which was between the time the case was submitted and the time it was decided. Justice Whittington has reviewed the briefs and the record before the court.

The Lender hereby agrees to loan $42,-000 to the Borrower.

For the additional consideration of $10.00 the Borrower hereby agrees to sell to Lender 5% of capital stock of DFW Valet Parking–South, Inc. authorized in Lender.

\* \* \* \* \* \*

[Repayment schedule set out.]

\* \* \* \* \* \*

The note shall be executed by DFW Valet Parking–South, Inc. and shall be guaranteed by the person [sic] guarantees of Frederick C. Ford and Arnold Polizzi as evidenced by their signatures as co-guarantors of the note.

The signatures below represent that all parties have read and fully understand the terms and conditions of the agreement and hereby agree that this document fully represents the intent of the parties; [sic]

| LENDER: | BORROWER: |
|---|---|
| s/ Danny Darwin | s/ Herbert O. Fisher |
| Danny Darwin | DFW Valet Parking–South, Inc. |
| 11/17/84 | 11/15/84 |
| Date | Date |
| | s/ Frederick C. Ford |

Co–Guarantors

Darwin's First Amended Original Petition alleged that Ford[3] personally guaranteed the agreement, that Ford's guaranty was an obligation of the community estate, that DFW Valet Parking–South, Inc. (DFW Valet), was actually and notoriously insolvent, and that Ford committed fraud. Darwin did not join DFW Valet as a defendant.

The Fords argue that rule 31 of the Texas Rules of Civil Procedure required Darwin to join DFW Valet or, alternatively, section 17.001(a) and (b) of the Texas Civil Practice and Remedies Code required Darwin to prove that DFW Valet was actually or notoriously insolvent. The Fords argue that Darwin did not do the former and

failed to prove the latter. Rule 31 states: "No surety shall be sued unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in cases otherwise provided for in the law and these rules." TEX.R. CIV.P. 31. Section 17.001 provides:

Suit on Contract With Several Obligors or Parties Conditionally Liable

(a) Except as provided by this section, the acceptor of a bill of exchange or a *principal obligor* on a contract may be sued alone or jointly with another liable party, but judgment may not be rendered against a *party not primarily liable* unless judgment is also rendered against the principal obligor.

(b) The assignor, endorser, guarantor, or surety on a contract or the drawer of an accepted bill may be sued without suing the maker, acceptor, or other principal obligor, or a suit against the principal obligor may be discontinued, if the principal obligor:

(1) is a nonresident or resides in a place where he cannot be reached by the ordinary process of law;

(2) resides in a place that is unknown and cannot be ascertained by the use of reasonable diligence; .

(3) is dead; or

(4) is actually or notoriously insolvent.

TEX.CIV.PRAC. & REM.CODE ANN. § 17.001 (Vernon 1986) (emphasis added).

The Fords argue in point of error one that there is no evidence that DFW Valet was actually or notoriously insolvent. In point of error two, the Fords argue that the trial court's implied finding that DFW Valet was actually or notoriously insolvent is against the great weight and preponderance of the evidence. In point of error three, the Fords contend that the trial court erred in not entering their requested findings of fact showing that DFW Valet was not actually or notoriously insolvent. For the reasons given below, we hold that Ford agreed to a guaranty of payment, as distinguished from a guaranty of collec-

---

**3.** All references to "Ford," in the singular, refer to Frederick Ford.

tion; therefore, Darwin could sue Ford directly.

The law recognizes a distinction between a guaranty of collection and guaranty of payment. *Wolfe v. Schuster,* 591 S.W.2d 926, 930 (Tex.Civ.App.—Dallas 1979, no writ). Courts regard a guaranty of collection as an undertaking of the guarantor to pay if the debt cannot be collected by the use of reasonable diligence. *Id.* The principal debtor must be joined unless excused pursuant to section 17.001. *See id.* at 932. On the other hand, a guaranty of payment is an obligation to pay the debt when due if the debtor does not. *Id.* at 930. A guarantor of payment is *primarily liable* and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty. *Hopkins v. First Nat'l Bank at Brownsville,* 551 S.W.2d 343, 345 (Tex.1977) (per curiam). The lender may bring an action against the guarantor of payment without joining the principal debtor. *Ferguson v. McCarrell,* 582 S.W.2d 539, 541–42 (Tex.Civ.App.—Austin), *writ ref'd n.r.e.,* 588 S.W.2d 895 (Tex.1979) (per curiam); TEX.BUS. & COM.CODE ANN. § 3.416(a) (Tex. UCC) (Vernon 1968) (hereinafter cited as "TEX. UCC").

The next issue is whether Ford was a guarantor of payment or a guarantor of collection. The parties' agreement, drafted by Ford, does not specify which type of guarantor Ford agreed to be. In Texas, courts generally construe a writing most strictly against its author. *Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793, 798 (Tex.1984). Accordingly, because Ford listed himself as a borrower in the agreement, we construe Ford's guaranty as one of payment. *Cf.* TEX. UCC § 3.416(c) ("Words of guaranty which do not otherwise specify guarantee payment.").

The next issue we address is whether a guarantor of payment of a non-UCC instrument is governed by the same rules as a guarantor of payment of a UCC instrument. The cases in which the Texas Supreme Court allowed a lender to sue a guarantor directly involved guaranties of instruments that, although not negotiable instruments, were nevertheless governed by the Texas UCC pursuant to section 3.805. *See, e.g., Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 876 (Tex.1976) (op. on reh'g); *Ferguson,* 582 S.W.2d at 539–40; *Hopkins v. First Nat'l Bank at Brownsville,* 546 S.W.2d 84, 86 (Tex.Civ.App.—Corpus Christi 1976), *writ ref'd n.r.e.,* 551 S.W.2d 343 (Tex.1977) (per curiam). In those cases, the underlying instruments were not payable to order or bearer and, therefore, failed to meet a requirement of negotiability pursuant to section 3.104(a)(4) of the Texas UCC. However, the Texas UCC applied to those instruments because section 3.805 provides that an instrument not payable to order or bearer but which would otherwise meet the requirements of negotiability is governed by Chapter 3 of the Texas UCC. TEX. UCC § 3.805 & comment. When the Texas Supreme Court needed to determine whether a lender could sue a guarantor of payment directly, it could rely upon section 3.416(a) of the Texas UCC, which permits a lender to bring an action against the guarantor of payment directly.

The underlying instrument in the present case is not governed by the Texas UCC. Section 3.104(a)(2) of the Texas UCC provides:

(a) Any writing to be a negotiable instrument within this chapter must

. . . . .

(2) contain an unconditional promise or order to pay a sum certain in money and *no other promise,* order, obligation or power given by the maker or drawer except as *authorized* by this chapter. . . .

TEX. UCC § 3.104(a)(2) (emphasis added). "Authorized" promises appear in section 3.105, which addresses when a promise or an order is considered unconditional, and section 3.112, which addresses whether additional terms or omissions affect negotiability. The underlying instrument in the present case contains a promise to sell stock, which is an "other promise" and is not "authorized" because it is not listed in either section 3.105 or 3.112. Therefore, the underlying instrument is not a nego-

tiable instrument. Although section 3.805 will bring an instrument that is not payable to order or bearer within the Texas UCC, section 3.805 does not bring an instrument that contains a promise to sell stocks within the Texas UCC. The question we must answer is whether a guarantor of payment of an instrument not governed by the Texas UCC is treated the same as a guarantor of payment of an instrument governed by the Texas UCC. For the following reasons, we hold that both guaranties of payment are treated the same.

The only Texas Supreme Court authority on a guaranty of payment of a non-UCC instrument is *Wood v. Canfield Paper Co.,* 117 Tex. 399, 5 S.W.2d 748 (1928), which is an opinion written by Panel A of the Texas Commission of Appeals and adopted by the Texas Supreme Court by virtue of an order of two justices. In that case, the court held that Canfield Paper Company could not sue the guarantor of a contract for goods directly and that the statutory predecessors of rule 31 and section 17.001 applied, despite the fact that the guarantor signed an absolute and unconditional guaranty of payment. The court recognized that there was a distinction between an absolute guaranty and a conditional guaranty and that there were "substantial differences" between a guaranty and a surety, but the court observed that when drafting the statutory predecessors of rule 31 and section 17.001, the Texas legislature used an "*arbitrary* and unrestricted grouping of sureties, guarantors, etc....." *Wood,* 5 S.W.2d at 750 (emphasis added). The court also said: "The Legislature had the right thus to ignore distinctions in fact and to rest the procedural statute upon *arbitrary* selection." *Id.* (emphasis added). Because the legislature "arbitrarily" grouped sureties, absolute guarantors, and conditional guarantors together, the court concluded that the distinction between them was unimportant and that the requirements of the statutory predecessors of rule 31 and section 17.001 governed the absolute guaranty of payment at issue in *Wood.*

At least with regard to UCC instruments, *Wood* is no longer the law. *Ferguson,* 588 S.W.2d at 895. The Texas Su-preme Court indirectly disapproved the holding of *Wood* when it disapproved the holding of *Cook v. Citizens Nat'l Bank of Beaumont,* 538 S.W.2d 460 (Tex.Civ.App.— Beaumont 1976, no writ), which relied specifically on *Wood. Ferguson,* 588 S.W.2d at 895. The question we now face is whether *Wood* remains the law with respect to guaranties of payment of non-UCC instruments.

We are persuaded that section 3.416(a) of the Texas UCC correctly reflects the present law regarding guaranties of payment of both UCC and non-UCC instruments. Regardless of the UCC or non-UCC nature of the underlying instrument, a guarantor performs the identical function and should assume the identical obligations. We find no rational basis for the argument that a guarantor of payment of a non-UCC instrument has different rights and liabilities than a guarantor of payment of a UCC instrument.

The Texas Supreme Court has said that a guarantor of payment *waives* any requirement that the holder of the note take any action against the maker as a condition precedent to his liability on the guaranty. *Hopkins,* 551 S.W.2d at 345. The Fort Worth Court of Civil Appeals held that a guarantor may *waive* his right to have the maker of the note made a party defendant. *Yandell v. Tarrant State Bank,* 538 S.W. 2d 684, 688 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). Because any guarantor of payment waives his right to have the maker of the underlying note made a party defendant, we fail to see why Ford, who is a guarantor of payment of a non-UCC note, should not be deemed to have waived the requirements of rule 31 and section 17.001.

■ Because we hold that Ford was a guarantor of payment of a non-UCC instrument and that a lender may bring an action against a guarantor of payment without joining the principal debtor, we now hold that Darwin was not required to join DFW Valet as a party or to prove that DFW Valet was actually or notoriously insolvent pursuant to section 17.001(b)(4) of the Texas Civil Practice and Remedies Code. *See Hopkins,* 551 S.W.2d at 345; *Bohart,* 539 S.W.2d at 877. Accordingly, the Fords'

points of error one through three are without merit and are overruled.

The Fords' fourth point of error complains that Darwin did not prove fraud. Having established his right to recover on Ford's guaranty of the instrument, Darwin was not required to prove fraud. The Fords' fourth point of error is overruled.

 The Fords' fifth point of error complains that the trial court erred in not timely issuing findings of fact. Although the trial court's findings were not timely issued, any error is harmless absent some showing that the late filing injured the Fords' rights. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984); *Wagner v. Riske,* 142 Tex. 337, 343, 178 S.W.2d 117, 120 (1944). The Fords argue, without citing any authority, that the trial court's late issuing of findings deprived them of the right to request additional or amended findings. We read rule 298 of the Texas Rules of Civil Procedure to allow a party to request additional or amended findings within five days of the issuance of the original findings, even if not timely. The Fords have shown no other injury resulting from the untimely findings. We, therefore, overrule the Fords' fifth point of error.

The judgment of the trial court is affirmed.