## WILLIAMS v. GUARANTY STATE BANK & TRUST CO. et al. (No. 78.)

(Court of Civil Appeals of Texas. Waco. June 5, 1924. Rehearing Denied July 7, 1924.)

1. **Bills and notes** ⬠301—Essentials of extension contract to relieve indorser from liability stated.

For holder's agreement to extend time of payment to relieve indorser from liability, under Negotiable Instruments Act, § 120, subd. 6 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—120), such agreement must be binding and preclude suit by creditor and prevent surety from making payment and proceeding against principal debtor, and, in absence of such a contract of extension, mere taking of another note as additional security does not discharge indorser from liability.

2. **Bills and notes** ⬠516—Evidence held to sustain finding extension relieving indorser from liability had not been made.

Evidence that renewal note was given two years after institution of and while suit on original note was pending, and that creditor made no attempt to delay or abate suit, *held* sufficient to sustain finding that no extension

of time to maker relieving indorser from liability had been made.

**3. Bills and notes ⬤⟫498—Burden of showing notice of dishonor to indorser held not sustained.**

Plaintiff, suing maker and indorser of note, *held* not to have discharged burden of proving notice to indorser of maker's dishonor of same within time required by Negotiable Instruments Act, §§ 89, 102, 104 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—89, 6001—102, 6001—104).

**4. Bills and notes ⬤⟫498—Burden of proving notice of dishonor to indorser on plaintiff.**

Under Negotiable Instruments Act, §§ 89, 102, 104 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—89, 6001—102, 6001—104), plaintiff suing indorser and maker of note after dishonor has burden of proving notice to indorser of dishonor within time allowed.

**5. Fraud ⬤⟫47—Allegations and proof of damage essential.**

Where recovery of damages for fraud practiced in sale of stock is sought rather than rescission, absence of allegations and proof of injury or damage, and amount thereof, precludes relief.

**6. Fraud ⬤⟫25—Liability of payee indorser of note to maker for damages unaffected by inability of holder to recover of indorser.**

In action on note, wherein defendant maker filed cross-action against codefendant indorser, for damages for fraud in procurement of same, fact that plaintiff could not recover of indorser because of lack of notice of dishonor, *held* not to affect maker's recovery on his cross-action.

Appeal from District Court, Coryell County; J. R. McClellan, Judge.

Action by the Guaranty State Bank & Trust Company against Steve Williamson and S. C. Williams. From judgment for plaintiff against both defendants, and for defendant Williamson against his codefendant, the latter appeals. Affirmed in part, and reversed and remanded in part.

Henderson & Ranson, of Bryan, and McClellan & Cross, of Gatesville, for appellant.

J. D. Brown, Jr., and T. R. Mears, both of Gatesville, and J. Tom Higgins, of Lampasas, for appellees.

GALLAGHER, C. J. The Guaranty State Bank & Trust Company, one of the appellees herein, sued Steve Williamson, the other appellee herein, as principal, and S. C. Williams, appellant herein, as indorser on a promissory note executed by said Williamson to said Williams, and by him indorsed and delivered to said bank. The parties will be designated as in the trial court. Plaintiff pleaded that said note was dated June 9, 1920, was due 9 months after date, and was for the sum of $2,025, with interest from date at the rate of 10 per cent. per annum. Plaintiff further pleaded that it acquired said note from said Williams for a valuable consideration before maturity and without notice to it of any defense thereto. Plaintiff further pleaded the presentment of said note to the maker for payment at its maturity and his refusal to pay the same. Plaintiff further pleaded that immediately after such refusal it gave said Williams due notice thereof; that such notice was given within the time and in the manner provided by law by mailing the same to said Williams at Bryan, Texas, on March 10, 1921, and by conversation with him on the telephone on March 21, 1921.

The defendant Williamson pleaded that he was induced by false and fraudulent representations made by said Williams to subscribe for $5,000 stock in the Houston Stockyards & Packing Company; that as payment for such stock he executed two notes—one for $3,000 and the other for $2,000. He also pleaded the alleged false representations in detail, and that he believed and relied on same, and that he would not have purchased said stock but for such belief and reliance. He denied that the note sued on was one of the two notes executed and delivered by him for such stock, and denied that he executed the same, but such denial was not verified and appears to have been abandoned. He prayed, in the event plaintiff should recover against him on the note sued on, that he have judgment against said Williams for the amount of such recovery.

The defendant Williams pleaded that he was discharged from liability on the note sued on by reason of the fact that he was liable thereon, if at all, as indorser only, and that the plaintiff and said Williamson had extended the time of payment thereof without his consent. He also pleaded that the note sued on was given by said Williamson to him in lieu of a cash payment on said stock, and that he negotiated the same for the purpose of making such cash payment. He also pleaded that he was an employee in selling said stock, and merely repeated the representations made to him by his employers, believing them to be true.

The case was tried before a jury, and submitted on special issues. Based on the verdict of the jury and additional findings of fact by the court, the court rendered judgment in favor of plaintiff, against said Williamson as principal and said Williams as indorser on said note, for the amount thereof, with interest and attorney's fees as stipulated in its face. It was further ordered in said judgment that said Williamson recover of said Williams whatever amount said Williamson is required to pay to the plaintiff in settlement of said judgment.

The defendant Williams contends that plaintiff and defendant Williamson, without his consent, agreed between themselves on a renewal or extension of the time for the

payment of the note sued on, and thereby discharged him as an indorser from liability thereon. The note sued on by its terms matured on March 9, 1921. This suit was brought thereon, according to the recital in plaintiff's amended petition, on the 23d day of March, 1921, and resulted in the judgment in favor of plaintiff for the amount of principal, interest, and attorney's fees stipulated therein. Defendant Williams introduced in evidence another note executed by said Williamson to plaintiff, dated March 19, 1923, due July 19, 1923, for $2,301.25, and another note executed by said Williamson to plaintiff, dated August 15, 1923, due October 15, 1923, for $2,396.75. The first of said two notes bore an indorsement by plaintiff, making it payable to the Republic National Bank of Dallas, Tex. An officer of plaintiff bank, examined as a witness by counsel for defendant Williams, testified as follows:

"(Witness shown a note) That note has not been renewed. Q. Haven't you taken a new note from Steve Williamson for this amount, the amount represented in this note? A. We took a memorandum to satisfy the bank examiner pending the outcome of this suit, but Mr. Williamson agreed to pay us regardless of the outcome of this suit. We took a memorandum note. I haven't the memorandum note. Mr. Brown has the note I believe—it is over at the office. Q. The amount of this note taken March 19, 1923, was a part of this obligation as of June 9, 1920, was it not? A. Well, pending the outcome of this suit, we were carrying practically the same amount, or either way, if we had had it charged off our books it wouldn't have made any difference. The amount due by Mr. Steve Williamson on this old note represented practically the same amount as that of the new note and the interest. Steve Williamson signed this note, and I put it in my note case as an obligation against him, and I was carrying it on the books as such."

On cross-examination by counsel for plaintiff, the witness was shown another paper, and, after examination thereof, testified as follows:

"This is the last note taken from Steve Williamson. I have another note from Mr. Williamson.

"By the Court: Q. Mr. Sadler, which of these notes—one seems to be dated August 15, 1923, the other July 19, 1923—which of these two notes was executed first? A. The note dated July 19th."

No other testimony on this point was introduced. The court submitted this contention to the jury by a special issue, which issue and the answer of the jury thereto are as follows:

"Has the note sued on in this case, and in evidence before you, been renewed, and the date of the maturity extended by the defendant, Steve Williamson? Answer: No."

The Uniform Negotiable Instruments Act of this state (General Laws 1919, c. 123 [Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197]) was in force when the note sued on in this case was executed and delivered. Subdivision 6 of section 120 of that act (article 6001—120) provides that a person secondarily liable on such an instrument shall be discharged from liability thereon:

"By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

[1] To constitute an extension of the time of payment of such an instrument or a postponement of the holder's right to enforce the same, there must be a binding agreement between the creditor and the principal debtor, which precludes such creditor from bringing suit on such instrument (as he may be required to do at the instance of the surety or indorser under the terms of article 6329, Revised Statutes), and which prevents the surety or indorser from making payment at any time and proceeding to immediately enforce his right to exoneration against the principal debtor. 32 Cyc. pp. 196–198. In the absence of such a contract of extension, the mere taking from the principal debtor of another note evidencing such debt, as collateral or additional security, does not discharge the indorser from liability on the original note. The rule on this point is stated in 8 C. J. p. 432, § 637, as follows:

"Both under the Negotiable Instruments Law and independent thereof, there is no extension of a bill or note, so as to postpone suit or so as to discharge indorsers, where another bill or note, either of the maker or of a third person, is taken merely as collateral or additional security, and there is no agreement postponing the remedy, although indulgence may in fact be granted."

[2] This suit was pending at the time the alleged renewal note was taken, and had been so pending nearly two years. It was duly prosecuted to judgment on the original note, notwithstanding the second alleged renewal note had not then matured. There was no attempt on the part of Williams, the original debtor, to delay or abate the suit. The facts were all before the jury, and they found that the note sued on had not been renewed nor the maturity thereof extended. There was evidence sufficient to justify the court in submitting the issue, and we are bound by said finding of the jury.

[3] Defendant Williams contends that the court erred in refusing to instruct the jury to return a verdict in his favor on the ground that plaintiff failed to prove that it gave him notice of the dishonor of the note sued on within the time and in the manner required by the provisions of said Negotiable Instruments Act aforesaid. The sections of said act which bear on this contention are as follows:

"89. Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged.

\* \* \* \* \* \* \*

"102. Notice may be given as soon as the instrument is dishonored; and unless delay is excused as hereinafter provided, must be given within the time fixed by this act.

\* \* \* \* \* \* \*

"104. Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times:

"1. If sent by mail, it must be deposited in the post office in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter.

"2. If given otherwise than through the post office, then within the time that notice would have been received in due course of mail, if it had been deposited in the post office within the time specified in the last subdivision." Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—89, 6001—102, 6001—104.

The note sued on was by its terms payable at the plaintiffs' bank at Gatesville. Defendant Williams resided in Bryan. There was no attempt by plaintiff to prove its allegation of notice to said defendant of the dishonor of said note by mail. The only evidence introduced in support of plaintiff's allegation that it gave said defendant such notice on the telephone is as follows:

"I had a conversation with Mr. S. C. Williams in regard to this note. I told Mr. Williams that Mr. Williamson had refused to pay the note, and that we were holding him as indorser. This conversation took place over the telephone. I was in the bank, and Mr. Williams was some place in Dallas. I called Mr. Williams in Dallas because I couldn't get in touch with him in Bryan, supposed to be his home. I had previous to that time tried to get in touch with him at Bryan. I put in a telephone call at Bryan, and some one over there told me he was in Dallas."

[4] The sufficiency of this testimony to show a valid notice of such dishonor under the provisions of said act is assailed on the ground that the date of such conversation was not shown, and that it was not shown that such conversation on the telephone occurred within the time that a written notice of such dishonor would have been received in due course of mail if it had been deposited in the post office within the time specified in the first subdivision of said section 104. The plaintiff in this case had the burden of proving that it gave said defendant notice of such dishonor of said note according to the provisions of said act, or of proving a waiver of such notice as provided by sections 109 to 111, inclusive, of said act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—109 to 6001—

111), or that such notice, notwithstanding the exercise of reasonable diligence on its part, could not have been given, or having been given, did not reach said defendant, as provided by section 112 thereof (article 6001—112). 8 C. J. p. 1016, § 1324; Earnest v. Taylor, 25 Tex. Supp. 38. There was no attempt to prove a waiver of such notice or that notice could not have been given to said defendant by the exercise of reasonable diligence. The plaintiff failed to discharge the burden imposed by the authorities cited.

[5] The defendant Williams contends that a recovery against him in favor of defendant Williamson is without support in either the pleadings or evidence, because neither shows that the purchase of said stock resulted in financial injury or loss to him, or the amount of such loss. Neither the pleadings nor evidence in this case disclose whether the stock purchased was actually issued and delivered to the defendant Williamson, nor what benefit he has received or is entitled to receive and can secure out of such transaction, nor that he has suffered or will suffer any financial injury or loss as a result thereof, nor the amount of such injury or loss, if any. Said defendant's cross-action is for the recovery of damages for fraud and not for rescission. In the absence of allegations and proof of injury or damage and the amount thereof, he cannot recover on such cross-action. Bremond v. McLean, 45 Tex. 10; Russell v. Industrial Transp. Co. (Tex. Sup.) 258 S. W. 462; Moore v. Cross, 87 Tex. 557, 560, 561, 29 S. W. 1057; Hopkins v. Woldert Grocery Co. (Tex. Civ. App.) 66 S. W. 63; Caffall v. Bandera Telephone Co. (Tex. Civ. App.) 136 S. W. 105, 111; Alamo Auto Sales Co. v. Herms (Tex. Civ. App.) 184 S. W. 740 (writ refused); Berry v. American Rio Grande Land & Irrigation Co. (Tex. Civ. App.) 236 S. W. 550, 552.

[6] Defendant Williams contends that said Williamson cannot recover against him for fraudulent representations, if any, made by him in the sale of said stock to said Williamson, if it should appear that plaintiff cannot recover against him on account of lack of diligence in giving him notice of the dishonor of the note sued on. That plaintiff is a holder of said note in due course under the terms of section 52 of said Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—52), and that said Williamson is bound to pay the same, is not questioned. He has not appealed from the judgment in favor of the bank against him nor complained of the same in any way. It is therefore our duty to affirm the judgment of the trial court in favor of plaintiff against him. In view of another trial of the issues between defendant Williams and plaintiff and between him and said Williamson, we deem it proper to say that, if defendant Williamson has a cause of action against him

for fraud in the sale of said stock, such cause of action is in no way dependent upon a recovery by plaintiff against said Williams as indorser of the note sued on.

The judgment appealed from, in so far as it grants a recovery in favor of plaintiff against defendant Williamson, is affirmed; but in so far as it grants a recovery in favor of plaintiff against defendant Williams and in favor of defendant Williamson against said Williams, it is reversed, and the cause remanded to the district court for another trial of the issues between them.