## CITIES SERVICE OIL CO. v. FIRST NAT. BANK OF GRANBURY et al.

No. 12612.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 6, 1932.

Phillips, Trammell, Chizum, Price & Estes and Clayton L. Orn, all of Fort Worth, for appellant.

Zweifel & Tuohy and Joe Ingraham, all of Fort Worth, for appellees.

BUCK, J.

The First National Bank of Granbury filed suit in the county court of Hood county against C. D. Perkins, Cities Service Oil Company, and the First State Bank of Walnut Springs. It alleged that C. D. Perkins was a resident of Hood county and defendant Cities Service Oil Company was a foreign corporation, duly authorized to do business in this state, and that neither the president, secretary, treasurer, or general manager resided in Hood county, and said company has no agent in Hood county, but has an agent in the state of Texas in the person of H. I. Cobble, who resided in Tarrant county, upon whom service might be had. That the First State Bank of Walnut Springs is a state banking corporation, and has its office and principal place of business in Walnut Springs, Bosque county. That C. D. Perkins was at all times mentioned in the petition employed by the defendant Cities Service Oil Company at Walnut Springs, and that on November 4, 1930, W. B. Tate, auditor for said Cities Service Oil Company, called on the defendant C. D. Perkins and made an audit of the said C. D. Perkins' accounts with the said Cities Service Oil Company, which accounts disclosed that certain sums of money were owing by the said Perkins to the said Cities Service Oil Company, which sums of money the said Perkins was unable to pay. Whereupon the said W. B. Tate devised a scheme for the benefit of his principal, Cities Service Oil Company, to enforce the collection of the amounts due said Cities Service Oil Company from said C. D. Perkins, and in furtherance thereof, on November 4, 1930, the said C. D. Perkins, hereinafter called drawer, made and executed two certain bills of exchange of that date directed to the First State Bank of Walnut Springs, hereinafter called drawee, and thereby ordered drawee to pay to the order of Cities Service Oil Company, hereinafter called payee, on demand, the respective sums of $493.42 and $269.42 for value received, which was done at the instance and instigation of the said W. B. Tate for the reasons aforesaid. Plaintiff alleged that the said bills of exchange were drawn upon blank customers' forms of the First State Bank of Walnut Springs and were written wholly in the handwriting of said W. B. Tate, except for the printed parts of said form drafts and the signature of the said C. D. Perkins. That said W. B. Tate accompanied the said C. D. Perkins to Granbury, where, on November 5, 1930, the said W. B. Tate and the said C. D. Perkins came to plaintiff's place of business and indorsed and delivered said bills of exchange to plaintiff in due course, for which plaintiff gave value, in that plaintiff issued its two drafts, Nos. 4423 and 4424 on the 5th day of November, 1930, drawn on the Fort Worth National Bank of Fort

Worth, and payable to the order of the Cities Service Oil Company for the respective sums of $492.12 and $268.75, and made charges for exchange thereon in the respective sums of $1.23 and $.67, and upon said drafts payee received full payment of the amounts thereof and said drafts were duly charged against the credit of plaintiff, which was the scheme and instigation of the said W. B. Tate, auditor and agent of the Cities Service Oil Company. That plaintiff forwarded said bills of exchange to the Fort Worth National Bank of Fort Worth for clearing through the usual channels and said bills of exchange were in due course of clearing presented for payment to the drawee at its usual place of business during office hours on a business day, to wit, the 9th day of November, 1930, for acceptance thereof, but drawee neither accepted nor dishonored said bills of exchange, but continued to hold same in its possession, without giving notice of dishonor to plaintiff until the 11th day of November, 1930, at which time drawee refused payment of same, and returned same through the usual channels of clearing to plaintiff unpaid. Thereafter, on November 14, 1930, said bills of exchange were forwarded direct from plaintiff to drawee for collection, but drawee neither accepted nor dishonored said bills of exchange, but continued to hold same in its possession without giving notice of dishonor to plaintiff until the 27th day of November, 1930, at which time the said bills of exchange were returned to plaintiff unpaid. On November 28, 1930, the drawee communicated by telephone and advised plaintiff to return said bills of exchange to it, drawee, and that the same would be paid, and in obedience thereto plaintiff forwarded said bills of exchange to drawee for collection, but drawee neither accepted nor dishonored said bills of exchange, but continued to hold same in its possession without giving notice of dishonor to plaintiff until January 5, 1931, at which time said bills of exchange were returned to plaintiff unpaid.

Plaintiff avers that there was an understanding between drawer and drawee that drawer would deposit sufficient money with drawee to cover said bills of exchange and drawee was induced by drawer to hold said bills of exchange without giving notice of dishonor to plaintiff and the other indorsers thereon.

Plaintiff further avers that the said bills of exchange were indorsed for payee by C. D. Perkins, agent and representative of payee, on November 5, 1930, who was in the employ of payee, and it was known to plaintiff that said Perkins was in the employ of payee. The money paid by plaintiff in consideration for the said bills of exchange was paid to payee and was actually received by payee, for which payee has not parted with anything of value, nor has payee suffered a

detriment, nor given anything in consideration therefor except its liability upon its indorsement upon said bills of exchange. That payee has permitted its representatives, Perkins and Tate, to perpetrate this fraud upon plaintiff and has sanctioned same in that payee received the money obtained by such fraud from plaintiff and has given nothing of value in consideration therefor, and though demand has been made upon payee by plaintiff to refund said money so obtained, the payee has refused to do so. That plaintiff has been the victim of a fraud and swindle perpetrated through the connivance of the said W. B. Tate for the benefit of his principal, Cities Service Oil Company, to the extent of the amount herein sued for, to wit, $762.77.

On April 3, 1931, the defendant Cities Service Oil Company filed its plea of privilege to be sued in Tarrant county, the home of its domicile. The plea seems to be in due form, and verified by affidavit of its attorney.

Plaintiff filed its controverting plea, in which it repeated its allegation that C. D. Perkins was a resident of Hood county. It relied on subdivision 4 of article 1995, Rev. Civ. Statutes, which provides that, if two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. The transfer or assignment of a note or chose in action shall not entitle any subsequent holder to sue thereon in any other county than that in which such suit could have been prosecuted if no assignment of transfer had been made.

In this controverting plea plaintiff alleged that a fraud or swindle had been perpetrated by defendant Cities Service Oil Company, which is more fully explained in plaintiff's said petition, and is fully incorporated herein by reference, and such allegations are true and correct. It alleged that the county court of Hood county had venue of this suit against the defendant Cities Service Oil Company under and by virtue of subdivision 9 of article 1995, Rev. Civ. Statutes, which provides that a suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile.

On April 17, 1931, the cause came on for trial on the plea of privilege of the Cities Service Oil Company, and the trial court rendered judgment overruling said plea, and defendant Cities Service Oil Company has appealed.

### Opinion.

Upon a hearing of the plea of privilege of the Cities Service Oil Company, plaintiff First National Bank of Granbury introduced the witness C. D. Perkins, who was the only witness who testified. He testified to the effect that he was the C. D. Perkins named as one of the defendants in the suit, and that he lived at Granbury and had lived there all his life. That he lived there on March 10, 1931. That he had been the agent of the Cities Service Oil Company for ten months at Walnut Springs, from April 1, to December 29, 1930. That he signed the bills of exchange, and also the customer's drafts on the First State Bank of Walnut Springs. That he signed the bill of exchange on the Fort Worth National Bank as C. D. Perkins, agent of the Cities Service Oil Company. That he had checked up short at Walnut Springs. He was somewhat short in stock, and the balance was in customers' accounts that he had not been able to collect. That some of the shortage was due to losses sustained before he was checked in as agent, and some of the shortage was due to losses occurring since. That he went to see the officials of the bank at Walnut Springs the day these drafts were drawn, during banking hours, and the banker told him that it would be satisfactory to draw a check on the bank, and he would pay it. That when the checks later came back to the Walnut Springs bank he did not have the money to pay them, and did not have the money at the time he drew the checks. That when he gave the drafts to the Cities Service Oil Company, he expected the drafts to be paid down there by the bank at Walnut Springs because they had promised they would pay them. That he told Mr. Tate that the bankers at Walnut Springs had told him to draw the drafts on their bank, and when they came through the bank would pay them. That Mr. Tate and he did not enter into any conspiracy or try to defraud the bank at Granbury. That when he gave the drafts he was relying upon the fact that the bank at Walnut Springs had promised him that when the drafts came through, if he did not have the money, the drafts would be paid. That if he had known that the bank at Walnut Springs would not take care of the drafts he would not have executed them. That when Mr. Tate started back from Walnut Springs to Granbury he asked permission to ride with him back to Granbury, which was granted. That he did not tell Mr. Tate when they got to Granbury that he would get drafts on the drafts he had drawn on the Walnut Springs bank. That he did not tell Tate that he would get the drafts on the Walnut Springs bank cashed at Granbury. That he told Mr. Tate that the money was not in the Walnut Springs bank to take care of the drafts, but that the banker at Walnut Springs had promised him to take care of them and that the banker had done so. That when they were at Walnut Springs and he had drawn the customers' drafts payable to the Cities Service Oil Company, the reason Mr. Tate did not take the drafts down to the bank at Walnut Springs

and cash them there was because it was a holiday and the bank was closed that day. The holiday, he thought, was Labor Day. It was evidently the General Election Day.

We do not see that there is any fraud perpetrated either by C. D. Perkins or by Tate, and we cannot affirm the judgment of the trial court on the ground that fraud was shown by either agent of the Cities Service Oil Company. If Perkins drew the drafts on the Walnut Springs bank, with the understanding between him and the Walnut Springs banker that the drafts would be paid when they reached Walnut Springs, we do not see any fraud on the part of Perkins.

Since no fraud is shown, the only right of venue as against the Cities Service Oil Company that the bank had in Hood county was on the indorsement. In order to hold an indorser on a draft, notice must be given to the indorser, or a duly authorized agent, and must be deposited in the post office in time to go by mail following the day of dishonor, or, if there be no mail, at a convenient hour of that day, by the next mail thereafter. Article 5938, § 104, subd. 1. It is not contended that upon the nonpayment of the draft drawn on the Walnut Springs bank any sort of notice was given in due time to the Cities Service Oil Company or to its authorized agent. Then comes the question whose duty it was to allege and prove that due notice had been given to the indorser. We conclude that such allegation must be made by plaintiff and proof thereof given by plaintiff. In Brannan's Negotiable Instruments Law, Sec. 89, p. 677, it is said: "In an action against the endorser of a note, it is not sufficient to allege that upon maturity the note was duly presented for payment and the endorser duly notified of nonpayment. The allegation and evidence must show the demand and notice to have been made upon such a day as will charge the defendant. * * * An allegation that a note was duly presented, dishonored, and protested, as to 'all of which the defendants had due and timely knowledge, is defective for failure to state that notice of dishonor was given to the defendant endorser." See, also, First National Bank v. Lee County Oil Company (Tex. Com. App.) 274 S. W. 127; Williams v. Guaranty State Bank & Trust Co. (Tex. Civ. App.) 264 S. W. 194.

Nobody pleaded due notice, and we think that the burden was on plaintiff, not only to plead it, but to prove it, and it has not discharged such burden.

We conclude that the trial court erred in not sustaining the plea of privilege of the Cities Service Oil Company.

The judgment is reversed, and judgment here entered sustaining said plea and transferring that portion of the suit by which it was sought to hold the Cities Service Oil Company to the proper court of Tarrant county.

Judgment reversed, and judgment here rendered sustaining the plea of privilege.

## HEINE v. POEHLS.
### No. 9726.

Court of Civil Appeals of Texas. Galveston.

Feb. 9, 1932.

Rehearing Denied March 18, 1932.

352

Alexander & Alexander, W. J. Alexander, Bowers & Bowers, and R. S. Bowers, all of Caldwell, for appellant.

W. M. Hilliard, of Caldwell, for appellee.

LANE, J.

T. W. Heine, commonly called Theodore Heine, a son of Fritz Heine, borrowed $100 from Eddie Poehls, and as evidence thereof he executed and delivered to Eddie Poehls his promissory note for $100. T. W. Heine died in January, 1929, after executing said note, leaving the same wholly unpaid. A few days prior to the death of T. W. Heine and while he was confined to his bed, Fritz Heine, his father, took two mules, the ownership of which is in dispute in this suit, from the premises occupied by T. W. Heine, and at the time this suit was instituted the two mules were in the possession of Fritz Heine, who was claiming them as his property.

Some twenty or more months after the death of T. W. Heine, to wit, on the 2d of September, 1930, Mrs. Heine, widow of T. W. Heine, deceased, gave Eddie Poehls a bill of sale to the mules, then in possession of Fritz Heine, in full satisfaction of the aforementioned note.

On September 10, 1930, Eddie Poehls brought this suit against Fritz Heine, in a justice court of Burleson county, to recover the possession of the two mules or their value alleged to be $150, in the event they could not be found. In the alternative, plaintiff alleged that defendant, for a valuable consideration, agreed to pay him the note above mentioned, principal, interest, and attorney's fees as provided therein, amounting in all to the sum of $127. He prayed that if it be found that he is not entitled to judgment for the mules or their value, he be awarded a judgment for the sum of $127, same being the sum due on the note, as above stated.

Defendant answered and averred that he never promised in writing to pay the debt of T. W. Heine sued on; and denied that he ever received any consideration for a promise on his part to pay the plaintiff the debt of T. W. Heine, deceased, which is sued upon. He denied that the mules in question were at any time the property of T. W. Heine, deceased.

Upon trial in the Justice court judgment was rendered for plaintiff for the two mules and decreed that in the event the mules cannot be had, then the plaintiff shall recover of and from defendant the sum of $150, the value of said mules, with interest, etc.

The cause was carried to the county court of Burleson county by an appeal by defendant. The cause was tried in the county court before a jury upon the following special issues:

"No. 1. Who owned the mules in question at the time of the death of the said T. W. Heine? Answer, giving the name of the owner:"

"No. 2. Did the defendant, Fritz Heine, after the death of T. W. Heine, promise to pay the note in question due and owing by T. W. Heine to the plaintiff Eddie L. Poehls? Answer 'Yes' or 'No' as you may find:"

"No. 3. If you have answered Special Issue No. 2 in the affirmative, then please answer this Special Issue No. 3, to wit: Did the defendant, Fritz Heine, receive sufficient property from the estate of T. W. Heine, deceased, to support his promise to pay said note? Answer 'Yes' or 'No' as you may find:"

In answer to the first special issue the jury found that T. W. Heine, at the time of his death, was the owner of the mules in question.

In answer to special issue No. 2, they found that defendant Fritz Heine, after the death of T. W. Heine, did promise to pay the note in question to Eddie Poehls, and in answer to issue No. 3 they found that Fritz Heine received from the estate of T. W. Heine, deceased, sufficient property to support his promise to pay said note.

Upon such finding of the jury, the court, upon request therefor by the plaintiff, rendered judgment in favor of the plaintiff, against the defendant, decreeing that the plaintiff recover of the defendant the two mules in question, describing them, and further decreeing that if said mules could not be recovered by plaintiff then, and in such event, the plaintiff recover of and from the defendant the sum of $150, the value of the mules, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment.

From such judgment the defendant, Fritz Heine, has appealed to this court.

The controlling issue in this case, if not the only issue, is, who was the owner of the mules in controversy at the time of the death of T. W. Heine, Fritz Heine or T. W. Heine, for this: If Fritz owned them the bill of sale of the mules by the widow of T. W. Heine, to appellee Eddie Poehls, was a nullity and it passed no title to the mules to Poehls. On the other hand, if they were owned by T. W. Heine, at his death the title passed to his widow and in such circumstances her bill of sale passed title to the mules to appellee Poehls. So then in either of the events stated it could not be that Fritz Heine became the owner in consideration of his verbal promise, if made, to pay the note executed by T. W. Heine, to Eddie Poehls. While the plaintiff was testifying in his own behalf, he was asked by his counsel the following question: "At the time T. W. Heine borrowed the $100.00 from you, did he offer to give you a mortgage on anything as security?" Appellant, in effect, objected to the question upon the grounds that an answer to such ques-

tion in the affirmative would be inadmissible to prove the ownership of the two mules sued for by the plaintiff, and because the answer called for a reproduction of a declaration of T. W. Heine, deceased, which was self-serving, and because such answer must necessarily be based upon hearsay as to the witness, and because it would not tend to prove the ownership of the mules in question. The court overruled such objection, and the witness answered as follows: "At the time T. W. Heine borrowed the $100.00 from me he offered to give me a mortgage on this pair of mules as security for the note." Appellant reserved his bill of exception to the action of the court in admitting such answer, and in this court assigns the admission of such testimony as reversible error.

Upon trial of the cause the court permitted the witnesses, Henry Jahns, Fritz Lambrecht, and Henry Schulz to testify that they knew that the two mules in question belonged to T. W. Heine, because T. W. Heine told them that they belonged to him. Such testimony was admitted over the objection of appellant that it was inadmissible for the following reasons: (1) Because it was hearsay testimony; (2) because the declaration attributed to T. W. Heine, if made, was self-serving and is not admissible to prove that he in fact owned the mules in question. Appellant reserved his bill of exception to the admission of such testimony and in this court assigns such admission as reversible error.

We think the assignments mentioned, present reversible error.

The controlling, if not the sole, issue raised by the evidence as we have already said, is: Did the mules in question belong to T. W. Heine at the time of his death, or did they at such time belong to appellant, Fritz Heine? While it is true that the plaintiff alleged that appellant for a valuable consideration agreed to pay the note executed by T. W. Heine, to him, there was no evidence offered to support such allegation. All the evidence shows that appellant took the mules under his contention that he had bought and paid for them before the death of his son T. W. Heine, and that they belonged to him. There is neither pleadings nor evidence to support a finding that appellant's promise in writing to pay the note in question, indeed there is no contention that he did so by anybody, but appellee contends and the evidence shows that a recovery against appellant upon his verbal promise to pay the note, if made, was sought, not upon the grounds that the mules were turned over to him as a consideration for his verbal promise to pay the note, but upon the contention that he took possession of property belonging to the estate of T. W. Heine, deceased, sufficient in value to pay the note, principal, interest, and attorney's fees provided for in said note. It is evident that the trial judge so construed the contention of appellee and the evidence, as he instructed

the jury to find whether or not appellant "received sufficient property from the estate of T. W. Heine, deceased, to support this promise to pay said note." The undisputed evidence shows that if appellant took and retained possession of any property belonging to the estate of T. W. Heine, deceased, other than the mules, he did, so under his belief that he inherited it as an heir of T. W. Heine, deceased, and not as a consideration for his verbal promise to pay the note in question. Under such circumstances no recovery could be had against appellant upon the note, in that it is provided by the statute of frauds, article 3995, that no action shall be brought in any court to charge any person upon a promise to answer for the debt, default, or miscarriage of another unless such promise be in writing and signed by the party to be charged therewith.

The record shows that after all the evidence was introduced and the verdict of the jury was returned into the court, the plaintiff, Eddie Poehls, presented a motion to the court praying as follows: "That judgment be entered herein in favor of this plaintiff for the pair of mules in controversy, and for his writ of possession, and that in the event said two mules cannot be recovered of and from the defendant, Fritz Heine, by this plaintiff, that plaintiff have judgment for the value of said two mules, the sum of One Hundred Fifty Dollars ($150.00), with interest thereon at the rate of six per cent per annum from this date."